ALONSO HERMANOS y JOSÉ RAMÓN y MANUEL ALONSO MUÑOZ, demandantes y apelados, *v.* JOSÉ MATOS, demandado y apelante.

No. 5793.—*Sometido:* Diciembre 21, 1932. *Resuelto:* Abril 6, 1934.

*H. Torres Solá*, abogado del apelante; *C. Iriarte*, abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

En 1°. de marzo de 1929 las partes en este caso celebraron un contrato a virtud del cual se negoció la venta de un ganado. Este fué vendido por precio alzado de $18,000. La compradora, Alonso Hermanos, una sociedad agrícola, pagó $3,000 en efectivo a José Matos, el vendedor, le traspasó una propiedad valorada en $5,000 y convino en pagar el saldo dentro de dos años, que vencerían el 1°. de marzo de 1931. Para garantizar el saldo insoluto de la compraventa, Alonso Hermanos otorgó hipoteca a favor de José Matos, cuya escritura fué debidamente inscrita.

En diciembre 12 de 1929 los demandantes iniciaron pleito para que se les devolviera lo que ellos habían pagado y para que se declarara extinguida la obligación de pagar, alegando que el contrato era nulo e inexistente, toda vez que al tiempo de efectuarse la supuesta venta el ganado estaba afectado de tuberculosis, oculta y no aparente. Las palabras específicas de la demanda a este respecto fueron:

"(d) Que el día primero de marzo de 1929, cuando la compraventa del referido ganado se llevó a efecto, se hallaba éste aparentemente en buenas condiciones, sin que nada en contrario advirtiese entonces el demandado a los actores en esta causa, los que carentes de conocimiento y de experiencia en veterinaria no pudieron descubrir a la simple vista si dicho ganado padecía de enfermedad oculta alguna.

"(e) Que desde mucho antes del primero de marzo de 1929, según la información y creencia de los demandantes, adquirida con posterioridad a la citada fecha, la partida de ganado vendida por don José Matos a Alonso Hermanos se hallaba afectada de tuberculosis, que es una enfermedad contagiosa, habiendo muerto de la misma según la información y creencia de los demandantes desde el 18 de marzo hasta el 6 de diciembre de 1929, cuarenta y tres (43) de las ciento veinte y dos cabezas que integraban la susodicha partida, a saber:

"  *    *    *    *    *    *    *    *

"Y, además, aplicada la tuberculina, que es un procedimiento para averiguar la existencia de tuberculosis en el ganado, por un funciona-

rio del Departamento de Sanidad de Puerto Rico, resultaron otras veintinueve cabezas del ganado que constituía la partida vendida a Alonso Hermanos por don José Matos, enfermas también de tuberculosis, contraída en poder del demandado esos animales, según la información y creencia de los demandantes.

"(f) Que los demandantes se hallan dispuestos a devolver al demandado (y ofrecen hacerlo así) todo el ganado sobreviviente que forma parte del total de cabezas vendídasle conforme ya se alegó en marzo primero del 1929, por el señor Matos."

El demandado presentó excepción previa, entre otras razones por haber prescrito la acción. El período de prescripción en que se basaba el demandado es el especificado en el artículo 1399 del Código Civil (Comp. de 1911, Sección 4505) como sigue:

"La acción redhibitoria que se funda en los vicios o defectos de los animales, deberá interponerse dentro de cuarenta días, contados desde el de su entrega al comprador, salvo que por el uso en cada localidad se hallen establecidos mayores o menores plazos.

"Esta acción en la venta de animales sólo se podrá ejercitar respecto de los vicios y defectos de los mismos que estén determinados por la ley o por los usos locales."

La excepción previa fué declarada sin lugar, y el demandado contestó. Alegó que al tiempo de efectuarse la venta el ganado no sufría de enfermedad alguna, oculta o aparente. Negó que las 43 cabezas de ganado que se alegaba habían muerto estuviesen sufriendo de tuberculosis al tiempo de efectuarse la venta y adujo en efecto que si éstas murieron ello se debió a la falta de cuidado de parte de los demandantes y al lugar o lugares a que éstos habían enviado el ganado.

En la demanda no se alegó falta de buena fe de parte del demandado.

De una lectura de la demanda y del alegato de los apelados podría decirse que la causa de acción aquí envuelta se basa exclusivamente en la idea de que la venta era enteramente nula e inexistente, ya que gran parte del ganado es-

taba afectado de tuberculosis en el momento de efectuarse la venta.

La parte demandante insiste en que la acción se basa en el artículo 1397 del Código Civil, que lee como sigue:

"No serán objeto del contrato de venta los ganados y animales que padezcan enfermedades contagiosas. Cualquier contrato que se hiciere respecto de ellos será nulo.

"También será nulo el contrato de venta de los ganados y animales si expresándose en el mismo contrato el servicio o uso para que se adquieren, resultaren inútiles para prestarlo."

La corte declaró probado que la venta se efectuó el primero de marzo de 1929; que el ganado fué sacado en dos partidas; que las vacas tuvieron que caminar de 10 a 12 kilómetros hasta la finca de los demandantes; que las vacas se destinarían a una lechería; que el día en que se efectuó la venta se notó que varias vacas tosían, que respiraban con dificultad, tenían diarrea y que se les coagulaba la leche en las ubres; que a las tres semanas las reses empezaron a morirse, hasta que murieron 72, de cuyo número 29 se sacrificaron por orden de las autoridades sanitarias, algunas de ellas débido a estar afectadas de tuberculosis, y otras porque se sospechaba que tenían esta enfermedad; que el ganado empezó a morir el 18 de marzo; que en julio, Varas, un veterinario, fué a examinar un perro y de paso también examinó el ganado; que practicó la autopsia en una vaca y halló que ésta padecía de tuberculosis; que entonces los demandantes fueron a ver al demandado, le explicaron la situación y éste dijo que nada tenía que ver con ello; que las vacas, así declaró la corte, fueron adquiridas para destinarlas a una vaquería y el mismo Matos compró leche a los demandantes durante algún tiempo después de efectuada la venta.

En relación con el testimonio de los peritos la corte dijo:

"Los peritos veterinarios declararon en cuanto al estado en que examinaron a las vacas y al hecho de que estaban afectas de tuberculosis pulmonar. Curiosa es la manifestación de los peritos, pues mientras unos dicen que el período de incubación dura meses y aún años,

el consenso más seguro de opinión es que el período de incubación puede durar desde dos semanas a varios meses, siendo muy difícil determinar si la afección tubercular en el ganado es reciente o no.''

La corte dijo, sin especificar cuántos, que los animales objeto de este litigio murieron de una enfermedad contagiosa, como lo es la tuberculosis pulmonar; que era un hecho establecido que la apariencia del animal no revela necesariamente su estado de salud; en otras palabras, que una vaca podía estar aparentemente sana y producir leche normalmente y sin embargo estar tuberculosa; que al ganado objeto de este litigio se le aplicó tuberculina y el resultado fué positivo en un número del mismo, que tuvo que ser sacrificado; que la finca adonde fueron llevadas las vacas estaba en condiciones higiénicas relativamente buenas y tenía suficiente agua; que la autopsia practicada en algunas de las vacas demostraba la existencia de un estado crónico cavernoso que indicaba que el ganado había estado enfermo por largo tiempo.

Entonces la corte fija las cuestiones en controversia en este caso así:

''Las partes hacen gran hincapié en cuanto a las cuestiones de derecho, y cree realmente el tribunal que éstas son las que deciden esta cuestion, toda vez que la prueba sostiene las alegaciones de la demanda, esto es, que en la fecha de la transacción, parte del ganado objeto de la misma estaba afecto de una enfermedad contagiosa. Tales cuestiones de derecho podemos concretarlas así: ¿se trata en este caso de una acción redhibitoria, o de una sobre inexistencia de contrato?''

La corte procede a discutir las cuestiones envueltas y entre otras cosas resuelve que el contrato era nulo e inexistente; que las partes sabían que el ganado iba a destinarse a una vaquería, es decir, la corte fué de opinión que la venta debía considerarse como un todo (*entirety*), en vista de que las vacas se utilizarían para una lechería, y el demandado tenía conocimiento de este hecho. La corte, por consiguiente, resolvió que la venta en su totalidad era nula. No se alegó en la demanda que el uso a que se dedicarían las vacas fué

especificado en el contrato, condición que fija el segundo párrafo del artículo 1397.

La corte fué de opinión que el período prescriptivo de 40 días no tenía necesariamente que aplicarse en Puerto Rico y que, sea como fuere, el contrato era enteramente nulo por falta de causa (*consideration*) adecuada. La corte basó su decisión en el artículo 1397, supra.

Para mayor conveniencia, discutiremos primero las controversias finales en este caso, prescindiendo por el momento de la excepción previa.

▆▆▆ El artículo 1397 del Código Civil, en que se basan los demandantes, aparece en un capítulo cuyo título es así:

"Del saneamiento por los defectos o gravámenes ocultos de la cosa vendida."

El apelante sostiene que el título demuestra que todos los artículos en él comprendidos se refieren a saneamiento, que una acción de saneamiento, cuando se trata de animales, debe ejercitarse dentro de cuarenta días, conforme dispone el artículo 1399, supra; y que la aquí ejercitada es una acción redhibitoria.

Por el contrario, los apelados sostienen que el artículo 1397 del Código Civil es absoluto en sus términos, y que el hecho de que accidentalmente fuese puesto bajo un capítulo titulado en la forma en que hemos visto, no podía afectar tal situación absoluta; que la teoría de dicho artículo, según explican los comentaristas, es hacer que el contrato sea totalmente inexistente, no siendo por consiguiente aplicable la prescripción.

El artículo 1397, supra, provee que no serán objeto del contrato de venta ganado y animales que padezcan enfermedades contagiosas. Esta es la ley escrita en Puerto Rico, e igualmente era la ley en España. El artículo 1494 del Código Civil español es idéntico al nuestro. No hay duda de que la tuberculosis sería una de las enfermedades contagiosas a que se hace referencia en el artículo 1397.

La tuberculosis del ganado puede ser transmitida a seres humanos por la leche y por otros medios que es innecesario enumerar. La enfermedad es similar en sus efectos a la tuberculosis en el ser humano, pero el contagio transmitido por el ganado al hombre no agota el campo de la tuberculosis que puede ser contraída.

La prueba de los peritos en este caso tendió a demostrar que una vaca puede estar padeciendo de tuberculosis y continuar produciendo leche buena; que es tan sólo cuando la enfermedad llega a cierta etapa que la leche misma es portadora de la enfermedad.

■ El Código Civil de Puerto Rico fué adoptado en 1902. La mente del legislador no estuvo especialmente fija en la enfermedad de la tuberculosis bovina. Si investigamos la historia de la legislación relativa a los vicios por los cuales el vendedor respondía del saneamiento, hallamos que aquellos vicios existentes en los animales que daban al adquirente una causa de acción fueron universalmente caracterizados como redhibitorios. Esto es así desde la época de los ediles en Roma. La palabra latina *redhibitio* significa la devolución de la cosa vendida, o a veces de parte de la cosa vendida, con derecho a obtener todo o parte del precio pagado. La existencia de un vicio en un animal que causa la nulidad o la rescisión de la venta ha sido siempre considerada como redhibitoria, al menos hasta que se aprobó el Código Civil Español en 1889, y por ende el de Puerto Rico. Es de notarse que en el proyecto de 1851 se indicaron ciertos vicios redhibitorios, y la tuberculosis en el ganado era uno de ellos. La legislación francesa sigue la misma pauta.

■ Louisiana ha escrito en su código la siguiente definición:

"Redhibición es la rescisión de una venta debido a algún vicio o defecto en la cosa vendida, que convierte a ésta en algo enteramente inútil o que hace su uso tan inconveniente e imperfecto que es de suponerse que el comprador no la habría adquirido de haber tenido

conocimiento del mismo." C. C. art. 2520. (Henderson v. Leona Rice Milling Co., 160 La. 597, 107, So. 459.)

Los demandantes mismos al iniciar esta acción ofrecieron devolver todas las vacas que continuaban en su poder, toda vez que en su opinión el contrato en su totalidad era nulo e inexistente, debido a la presencia de tuberculosis y al hecho de que las vacas eran destinadas para una vaquería. En otras palabras, el distinguido letrado de los apelados se dió cuenta de que a fin de tener la posibilidad de éxito en su litigio, ellos estaban obligados a devolver o a ofrecer la devolución de los animales objeto del contrato, ora se hallasen enfermos o no. En cualquiera otra forma en que se le caracterice, o cualesquiera que sean los efectos del artículo 1397, la acción de nulidad allí mencionada es necesariamente una acción redhibitoria. Si el vendedor rehusa devolver el precio y aceptar la devolución de los animales, el comprador tiene que promover una acción y ésa es una acción redhibitoria, ora la cosa que se trató de vender pueda o no ser objeto de un contrato a tenor de las disposiciones del artículo 1397. La idea de los demandantes en el presente caso fué que como gran parte de los animales estaban enfermos, el contrato en su totalidad era nulo.

Algunos de los comentaristas al Código Civil aparentemente dicen, especialmente al discutir la cuestión de prescripción, que el artículo 1397 hace que el contrato sea absolutamente inexistente, queriendo decir, por consiguiente, que no surge la prescripción. 10 Manresa (4ª. ed.) 229; 24 Laurent 109; Gasca, *infra*. Otros comentaristas no están de acuerdo con esta interpretación. El comentario más punzante lo hace Scaevola en la página 668 del tomo 23 de sus Comentarios al Código Civil, como sigue:

"Repetimos que por el motivo de los defectos redhibitorios ningún contrato puede anularse, y menos aún los del artículo 1494 que los del 1484. Añadiremos que si el artículo 1484 ha tratado efectivamente de establecer la nulidad, incurre en gran contradicción con el 1494 y con los que regulan el consentimiento en general. Preferimos,

por consecuencia, pensar que dormitaba Homero; que no se trató de otra cosa que de hacer específicamente aplicable al caso de la venta de animales y ganados lo que genéricamente estaba ya dispuesto para toda clase de enajenaciones; que se incurrió, al obrar así, en una repetición sin motivo, y que, como sucede casi siempre en tales casos, al decir lo que no se necesitaba, se acabó por decir lo que no se debía. Entiéndase, pues, que donde se declara nulo el contrato de que venimos hablando, se ha querido significar 'rescindible', sometido a la acción redhibitoria como cualquiera otro en que la cosa adquirida carece de idoneidad.''

Tomemos un ejemplo particularmente germano a este caso. Se efectúa la venta de una vaca y ambas partes actúan de buena fe. No obstante, luego de transcurrir algún tiempo, bien por sus propias observaciones o por la intervención de las autoridades sanitarias, el comprador se entera de que la vaca padece de tuberculosis incipiente. Sin embargo, la vaca es excepcionalmente buena y el adquirente desea retenerla. Según todas las autoridades no puede retener la vaca y obtener la devolución del precio. Para que pueda recuperar el precio debe devolver el animal. Queda enteramente a su opción retener la vaca. No podría aplicarse una regla diferente cuando se vende ganado en globo.

Ambas partes han entablado una discusión respecto a si la venta por precio alzado podía afectar las cuestiones que están ante nos. Los apelados sostienen que como gran parte del ganado estaba afectado, toda la venta era nula o anulable. El apelante insiste en que el artículo 1397 sólo es aplicable a lo sumo a ganado realmente enfermo y que cada animal debe ser considerado separadamente.

En Louisiana se ha dicho que el saneamiento es parte integrante (*is of the nature*) del contrato de compraventa; es decir, la ley lo considera implícito, si no existe pacto en contrario; pero que no es esencial a tal contrato; que el vendedor puede estipular que no responderá del saneamiento de la cosa, que podrá pactar que su responsabilidad por saneamiento será limitada o que el comprador aceptará el saneamiento de un tercero. *Strawbridge* v. *Warfield*, 4 La. 20.

En *Bayon* v. *Vavasseur,* 10 Mart. (O. S.) 61, 66 se dictó un fallo similar.

Esto nos lleva a otra cuestión. Los apelados tratan de sostener que el artículo 1397 subsiste por sí solo y hace que el contrato sea absolutamente inexistente. No obstante, dicho artículo está comprendido en un capítulo que habla de saneamiento por los defectos o gravámenes ocultos de la cosa vendida.

Por tanto, llegamos a la conclusión con Scaevola de que necesariamente el legislador quiso decir que el contrato podía ser rescindido o anulado como en cualquiera otra clase de acciones redhibitorias; y que el artículo 1397 no excluye del campo de los saneamientos la transacción celebrada en este caso.

De igual modo, las partes, mediante estipulación, pueden hacer que sean redhibitorios aquellos defectos que de ordinario no lo son. Esto tiene cierta tendencia a demostrar que la palabra "redhibitorio" tiene un significado o posición reconocidos en Derecho. Es otro indicio que envuelve la idea de que una acción que comprende la devolución de propiedad defectuosa debe ser considerada como redhibitoria.

La naturaleza de una acción redhibitoria está demostrada en el caso de *Childs* v. *Wilson,* 15 La. Ann. 512, en que la corte dijo:

"El demandante no inicia su acción para anular la venta y recobrar los pagarés dados en pago de su precio; en otras palabras, no se trata de una acción redhibitoria; sino que demanda para que se le devuelva el precio, sin tratar de alterar o anular la compraventa, en virtud de la cual el caballo y la mula pasaron a su poder y de conformidad con la que él otorgó o entregó sus pagarés al demandado. El demandante no puede hacer esto; antes de poder recobrar el precio o los pagarés dados en pago del mismo, debe solicitar y obtener, en la forma prescrita por la ley, la nulidad de la venta."

Siempre se presupone que el animal objeto de la redhibición debe ser devuelto en caso de que pueda serlo. Si bien en el presente caso quedan cincuenta vacas y la prueba ten-

dió a demostrar que estaban sanas, los demandantes procedieron sobre la teoría de que podían devolverse, toda vez que el ganado fué adquirido para una lechería, y trataron de devolverlas. Así, pues, la acción que trataron de aducir era necesariamente redhibitoria.

En el tomo 4, página 230, de su obra sobre el Código Civil, Falcón dice con respecto a redhibición lo siguiente:

"Como a los vicios ocultos que dan lugar al saneamiento se les ha llamado siempre vicios redhibitorios, de aquí que el saneamiento por esta causa lleve el nombre de redhibitorio y se llame también redhibitoria la acción que asiste al comprador. El efecto de la redhibición consiste en que el comprador puede optar, o por rescindir el contrato, o por reclamar la rebaja de la parte proporcional del precio. Si opta por lo primero, se restituirán mutuamente el comprador y el vendedor, las cosas y el precio, y el comprador percibirá, además, los gastos que le hubiere ocasionado la compra. Si opta por lo segundo, peritos nombrados por ambas partes decidirán (a no haber convenio) cuánto pierden de su precio las cosas, por causa de los vicios o gravámenes descubiertos en ellas.

"      *      *      *      *      *      *      *

"Cuando la cosa vendida se pierde por consecuencia de los vicios ocultos, se pierde para el vendedor, que habrá de devolver el precio y abonar los gastos, y además pagar los perjuicios, si obró de mala fe.

"      *      *      *      *      *      *      *

"La venta de animales está sujeta a reglas especialísimas, motivadas por la frecuencia de los vicios ocultos y por la mayor facilidad que existe para encubrirlos. Por eso las reglas que dictan los códigos son muy especiales. Algunos señalan los vicios o enfermedades ocultas que merecen la calificación de redhibitorios, y que por tanto dan lugar al saneamiento. Al efecto, agrupan en diferentes clases los ganados. Esto proponía nuestro proyecto de Código de 1851, y esto hacen el código austriaco y el bávaro. Los más sólo consignan la regla general, y esta regla en algunos, como en el de Francia, se ha completado después por una ley especial. Éste es el sistema que ha adoptado nuestro código, y a una ley futura sobre vicios redhibitorios se refiere el artículo 1496, cuando habla de *vicios y defectos que están determinados por la ley.*

"Cuando se venden en junto varios animales, y sólo en algunos se descubren vicios redhibitorios, sólo respecto de ellos tendrá lugar el saneamiento; pero esta regla no puede aplicarse cuando se vea

claramente que el comprador no habría comprado todos a saber que había algunos viciosos; como sucederá en troncos de caballos, parejas de mulas, yuntas de bueyes, y demás que se toman por parejas.

"En las ventas de ganados que se realizan en ferias y mercados no cabe saneamiento por vicios ocultos, salvo que los animales padezcan enfermedades contagiosas, o que habiéndose expresado en el contrato el servicio a que se destinaban, resultaren luego inservibles."

En sus comentarios al Código Civil Español, tomo 4, página 507, don León Bonel y Sánchez, refiriéndose al artículo 1494 del Código Civil español (equivalente al 1397 del nuestro) indica que la tuberculosis pulmonar es considerada como un vicio redhibitorio en el ganado.

En las notas que se hacen al pie de los códigos franceses editados en 1861, el primer vicio redhibitorio en ganado que · se menciona es la tuberculosis pulmonar.

En el segundo tomo, página 13, de su obra "De la Vente," dice Troplong: "Si el animal está afectado de una enfermedad contagiosa, procede la redhibición." Y luego: "Fuera del contagio, que es un vicio redhibitorio para toda clase de animales. . .", y entonces el autor procede a especificar otras enfermedades que pueden ser consideradas como redhibitorias.

Martínez Ruiz dice en la página 362 del tomo 9 de sus comentarios al Código Civil:

"En todos los artículos en este comentario examinados se habla de redhibición, esto es, de la facultad del comprador para rescindir el contrato. No es éste, sin embargo, el único derecho que se concede al comprador para remediar el perjuicio que los vicios o defectos de los animales adquiridos le hayan causado. El artículo 1,499 hace extensivo a las ventas de animales y ganados el precepto del 1,486, según el cual, puede el comprador optar, sin que haya nada que limite este derecho de elección, entre desistir del contrato, abonándosele los gastos que pagó, o recibir una cantidad proporcional al precio, a juicio de peritos.

"El término para ejercitar cualquiera de estas acciones, redhibitoria o estimatoria, no es el señalado para ellas en el artículo 1,490, sino el que determinen los usos locales o, a falta de ellos, el de cuarenta días que fija el 1,496."

En el tomo XXVI, página 884, de la Enciclopedia Jurídica Española, se define la acción redhibitoria así:

"Acción establecida en el Derecho romano y que correspondía al comprador en el contrato de venta.

"Según una disposición particular del edicto edilicio, el vendedor era responsable de los defectos ocultos (*morti vitra*), que ya tenía la cosa vendida al tiempo del contrato, aun cuando no los hubiese conocido, así como era responsable de todas las cualidades especialmente determinadas que la cosa debía tener, o de las que debía hallarse exenta (*dicta promissa*), de modo que cuando la cosa vendida tenía defectos ocultos o cuando no podían probarse los *dicta* y *promissa*, el comprador podía siempre elegir entre reclamar la rescisión del contrato o la disminución del precio, tanto si los defectos eran capitales como accesorios.

"En el primer caso, la acción que ejercitaba era la *Redhibitoria* que duraba seis meses, cuando el vendedor había dado caución por los defectos de la cosa, y en el caso contrario, de dos meses. La acción redhibitoria no podía intentarse más que una sola vez . . .

"Nuestro Derecho privado ha aceptado en esencia la acción redhibitoria al conceder la rescisión de los contratos de compraventa por los vicios de la cosa vendida, tanto en el Derecho Civil común como en el especial mercantil, distinguiendo entre los vicios fácilmente apreciables al examen del comprador y los ocultos, para la fijación de los plazos o términos de rescisión."

También tenemos a la vista un tratado sobre la compraventa por el comentarista italiano Gasca, traducido al español. Dice él, al comentar preceptos similares del código italiano:

"Es nula la venta cuando la causa de ella, que se confunde con el objeto, sea contraria a la ley o al orden público (art. 1122 del Código Civil); es nula porque tratándose de cosas extracomercio el vendedor obraría fraudulentamente al venderlas, y también porque la venta no puede ser válida cuando constituye un delito o una contravención.

"Y, en mi opinión, son defectuosas, equivocadas, las sentencias que consideran la enfermedad infecciosa o contagiosa del animal como vicio redhibitorio. No hay duda de que en tales casos no se debe declarar la nulidad absoluta del contrato de venta sino cuando se pruebe que el germen de la enfermedad preexistía al contrato, ya que

el animal hubiera podido contraer aquélla después de vendido. Probado esto, haya o no obrado de buena fe el vendedor, la venta no debe resolverse solamente por el ejercicio de la acción redhibitoria, sino que debe declararse nula, por faltar la cosa que puede, según la ley, ser objeto de la venta." (Página 357.)

Y posiblemente más en el mismo sentido. Sin embargo, el autor cita tres decisiones de cortes de casación de Italia que no están de acuerdo con él. Y él mismo no aduce las razones que tiene para su conclusión.

██ ██ Para nuestros fines sería conveniente transcribir todo el capítulo sobre saneamiento por defectos ocultos:

"Artículo 1387. El vendedor estará obligado al saneamiento por los defectos ocultos que tuviere la cosa vendida, si la hacen impropia para el uso a que se la destina, o si disminuyen de tal modo este uso que de haberlos conocido el comprador, no la habría adquirido, o habría dado menos precio por ella; pero no será responsable de los defectos manifiestos o que estuvieren a la vista, ni tampoco de los que no lo estén, si el comprador es un perito que por razón de su oficio o profesión, debía fácilmente conocerlos.

"Artículo 1388. El vendedor responde al comprador del saneamiento por los vicios o defectos ocultos en la cosa vendida aunque los ignorase.

"Esta disposición no regirá cuando se haya estipulado lo contrario, y el vendedor ignorara los vicios o defectos ocultos de lo vendido.

"Artículo 1389. En los casos de los dos artículos anteriores, el comprador podrá optar entre desistir del contrato, abonándosele los gastos que pagó, o rebajar una cantidad proporcional del precio, a juicio de peritos.

"Si el vendedor conocía los vicios o defectos ocultos de la cosa vendida y no los manifestó al comprador, tendrá éste la misma opción y además se le indemnizará de los daños y perjuicios, si optare por la rescisión.

"Artículo 1390. Si la cosa vendida se perdiere por efecto de los vicios ocultos, conociéndolos el vendedor, sufrirá éste la pérdida, y deberá restituir el precio y abonar los gastos del contrato, con los daños y perjuicios. Si no los conocía, debe sólo restituir el precio y abonar los gastos del contrato que hubiese pagado el comprador.

"Artículo 1391. Si la cosa vendida tenía algún vicio oculto al tiempo de la venta, y se pierde después por caso fortuito o por culpa

del comprador; podrá éste reclamar del vendedor el precio que pagó con la rebaja del valor que la cosa tenía al tiempo de perderse.

"Si el vendedor obró de mala fe, deberá abonar al comprador los daños e intereses.

"Artículo 1392. En las ventas judiciales nunca habrá lugar a la responsabilidad por daños y perjuicios; pero sí a todo lo demás dispuesto en los artículos anteriores.

"Artículo 1393. Las acciones que emanan de lo dispuesto en los cinco artículos precedentes se extinguirán a los seis meses, contados desde la entrega de la cosa vendida.

"Artículo 1394. Vendiéndose dos a más 'animales juntamente, sea en un precio alzado, sea señalándolo a cada uno de ellos, el vicio redhibitorio de cada uno dará solamente lugar a su redhibición, y no a la de los otros; a no ser que aparezca que el comprador no habría comprado el sano o sanos sin el vicioso.

"Se presume esto último cuando se compra un tiro, yunta, pareja o juego, aunque se haya señalado un precio separado a cada uno de los animales que los componen.

"Artículo 1395. Lo dispuesto en el artículo anterior respecto de la venta de animales se entiende igualmente aplicable a la de otras cosas.

"Artículo 1396. El saneamiento por los vicios ocultos de los animales y ganados no tendrá lugar en las ventas hechas en feria o en pública subasta, ni en la de caballerías enajenadas como de desecho, salvo el caso previsto en el artículo siguiente.

"Artículo 1397. No serán objeto del contrato de venta los ganados y animales que padezcan enfermedades contagiosas. Cualquier contrato que se hiciere respecto de ellos será nulo.

"También será nulo el contrato de venta de los ganados y animales, si expresándose en el mismo contrato el servicio o uso para que se adquieren, resultaren inútiles para prestarlo.

"Artículo 1398. Cuando el vicio oculto de los animales, aunque se haya practicado reconocimiento facultativo, sea de tal naturleza que no basten los conocimientos periciales para su descubrimiento, se reputará redhibitorio.

"Pero si el profesor, por ignorancia o mala fe, dejara de descubrirlo o manifestarlo, será responsable de los daños y perjuicios.

"Artículo 1399. La acción redhibitoria que se funda en los vicios o defectos de los animales, deberá interponerse dentro de cuarenta días, contados desde el de su entrega al comprador, salvo que por el uso en cada localidad se hallen establecidos mayores o menores plazos.

"Esta acción en la venta de animales sólo se podrá ejercitar respecto de los vicios y defectos de los mismos que estén determinados por la ley o por los usos locales.

"Artículo 1400. Si el animal muriese a los tres días de comprado, será responsable el vendedor siempre que la enfermedad que ocasionó la muerte existiera antes del contrato, a juicio de los facultativos.

"Artículo 1401. Resuelta la venta, el animal deberá ser devuelto en el estado en que fué vendido y entregado, siendo responsable el comprador de cualquier deterioro debido a su negligencia, y que no proceda del vicio o defecto redhibitorio.

"Artículo 1402. En las ventas de animales y ganados con vicios redhibitorios, gozará también el comprador de la facultad expresada en el artículo 1389; pero deberá usar de ella dentro del mismo término que para el ejercicio de la acción redhibitoria queda respectivamente señalado."

Como se verá, el artículo 1393 fija un término de seis meses para la prescripción de las acciones de saneamiento ordinario. El artículo 1399, sin embargo, exige que una acción redhibitoria por vicios o defectos en animales debe incoarse dentro de cuarenta días. Este es un precepto universal que necesariamente se aplica a vicios redhibitorios, ya sean de la índole de una enfermedad contagiosa o no.

Es casi inimaginable que el comprador de una vaca deba tener derecho a rescindir o anular la venta por uno, dos, tres o más años después de haber tomado posesión del animal. Es inconcebible que un hombre pueda ordeñar una vaca por dos o tres años, hallarse perfectamente satisfecho con ella, y entonces devolverla porque tenía tuberculosis. Scaevola dice que él no puede concebir que por razones de una enfermedad contagiosa el período prescriptivo deba cambiarse de cuarenta días a cuatro años. 23 Scaevola, pág. 666. En otras palabras, él tenía la idea de que aun para enfermedades contagiosas debía regir la prescripción, es decir, que en algún momento la acción prescribiría. No cabe resolver, según sostienen los apelados, que jamás hubo un período prescriptivo en el caso. Si la acción podía prescribir en cuatro años, no hay motivo por el cual la legislatura no pudiera fijar cua-

renta días en casos de enfermedades contagiosas. Para nos-otros ése es el punto principal del litigio.

Lo que la legislatura española tuvo en mente probable-mente fué que una enfermedad contagiosa se manifestaría dentro de cuarenta días. No se prestó atención especial a la idea de que tal vez hubiera de ser necesario un período más largo cuando de tuberculosis se trataba. En todo caso, el estatuto fijó cuarenta días a menos que los usos locales esta-bleciesen un término distinto. *Ad ea quae frequentius acci-duat jura adaptantur.* Tan era así que al prepararse el pro-yecto de 1851 los peritos veterinarios creyeron que quince días era un término razonable para entablar una acción red-hibitoria a causa de tuberculosis bovina.

Refiriéndose a la legislación defectuosa que ahora estamos considerando Scaevola dice:

"Esta materia de la venta de animales se ha traído al Código por medio de retazos, con los que resulta formado un verdadero edredón jurídico, de toda clase de telas y colores. Las contraposiciones entre unos y otros preceptos son tan llamativas como estrambóticas; las deficiencias que se advierten tan numerosas como lamentables; y si no fuera porque, en realidad, a pesar del distinto origen de cada disposición, y de la independencia de que se revisten, todas ellas responden íntimamente a principios muy conocidos y antiguos, que se reconocen desde luego a su través, se estaría a veces en la impo-sibilidad material de penetrar el pensamiento del .legislador.

"Los dos artículos que tenemos delante (correspondientes al 1396 y 1397 del Código de Puerto Rico) son ya buena prueba de estas con-clusiones, pues, por la forma de su redacción, parecen atender a fines completamente distintos, no obstante que guardan perfecta conformi-dad esencial. En cuanto al tecnicismo que emplean y a la precisión con que están expresados, son también inaceptables casi de todo punto. Gracias a la suerte de tratarse de asuntos generalmente de muy poca cuantía, ventilables en juicio verbal, las consecuencias no serán muy temibles, pues, de otro modo, estos dos artículos, y todos los siguientes de la sección se harían memorables en la estadística de la administra-ción de justicia." (Id., página 655).

Este edredón, según Scaevola lo caracteriza, nos ha impe-

lido a hacer un examen más amplio de las autoridades que el que es ordinariamente necesario.

Hasta el 1889, cuando fué aprobado el Código Civil, es de observarse que el término para iniciar una acción redhibitoria era limitado: desde tiempo inmemorial, un período de no más de seis meses. Si con el artículo 1397, para tomar un caso extremo, el legislador creyó que la existencia de una enfermedad contagiosa haría inexistente un contrato de venta de ganado, ¿mostró el legislador alguna intención de impedir que una acción de esa naturaleza jamás prescribiese? Según dicen algunos de los comentaristas, parece inconcebible que se tuviese por mira impedir que esa acción prescribiese o relegar la prescripción al término de cuatro años, determinado por el capítulo sobre nulidad de acciones, o al de quince años provisto en el código para la prescripción de acciones cuando no se disponga otra cosa en el código. Como la prescripción de cuarenta días fué primeramente introducida en el código junto con el precepto reformado del artículo 1397 (1494 del código español), la fuerte probabilidad es que el legislador creyó que un período más corto que el de antaño era aconsejable. La única forma de armonizar toda la materia es concluyendo que la legislatura continuó con la idea de que la obligación en que incurría un vendedor de ganado con enfermedades contagiosas correspondía a un derecho redhibitorio que el comprador tenía, y la legislatura también tuvo en mente que el período para ejercitar todas las acciones redhibitorias, incluyendo las que envolviesen animales afectados de enfermedades contagiosas, fuese corto. Para otros vicios ocultos en ventas de bienes, impera el período prescriptivo de seis meses. La manera de armonizar todo el capítulo es declarando que la legislatura fijó distintos períodos de prescripción para cada vicio oculto allí enumerado; en otras palabras, un período de seis meses cuando se trate de vicios ordinarios, y uno de cuarenta días cuando se trate de animales. La introducción en 1889 de un término prescriptivo de cuarenta días y la promulgación del artículo 1397 al mismo

tiempo serían una coincidencia extraña, si no tuviesen rela-
ción entre sí.

■■ No prestaremos gran atención a la contención de
que la demanda no aducía causa de acción. Lo que el ape-
lante aparentemente sostiene es que, como no se demostró
que parte de las reses—159 cabezas o más—estuviesen enfer-
mas, la teoría de la demanda no podía prosperar, o por lo
menos no podía prevalecer en lo referente al ganado que no
se había demostrado estar vicioso.

Creemos que procedía la excepción previa. Si la corte
inferior y los apelados tuviesen razón en que la totalidad de
la venta, considerada como un todo, era anulable a causa de
enfermedades contagiosas en una mayoría de las reses, en-
tonces, desde luego, la demanda era buena. Tenemos la idea
de que cuando se vende ganado, aun para una vaquería, los
animales son vendidos individualmente. Esa es una venta
distributiva. No importa que se realice por precio alzado.
Con las excepciones indicadas en el capítulo, sólo pueden de-
volverse las cabezas afectadas de un vicio redhibitorio, según
todos los códigos y comentaristas que hemos encontrado.
La noción que tenemos de una vaquería es que para sus fines
constantemente se está vendiendo y comprando ganado, y la
demanda no alega que el negocio de vaquería no pudiera em-
pezar o proseguir con motivo de los vicios ocultos de los ani-
males, o que si las reses se morían no pudieran ser reempla-
zadas. A nuestro modo de ver, tan pronto muriese una vaca,
podía comprarse otra o el negocio podía continuar sin una
nueva adquisición. Por otra parte, la demanda no alega cla-
ramente que las vacas se destinaban a una vaquería. Ade-
más, cuando se compran vacas en junto, en la mayoría de los
casos se adquieren para una lechería o para fines similares.

■ Igualmente creemos que dada la actitud de los ape-
lados al basar su acción exclusivamente en el artículo 1397
del Código Civil, la moción eliminatoria presentada por el
demandado debió prevalecer en ciertos particulares. Por
ejemplo, todo lo relacionado con el conocimiento o falta de

conocimiento de los demandantes al adquirir las vacas. Ese conocimiento carecía totalmente de importancia a virtud del artículo 1397. Por otra parte, el apelante también solicitó que se eliminase de la demanda lo que se decía respecto a una oferta que hacían los demandantes de devolver las vacas restantes. Nos parece que la alegación era importante para los propios fines del demandado al tratar éste de demostrar que la acción era redhibitoria y había prescrito.

En vista del hecho de que en todo caso la sentencia debe ser revocada, no prestaremos mayor atención a la moción para eliminar.

Por motivos similares, aunque tal vez la demanda podría considerarse ininteligible y ambigua en ciertos aspectos, no discutiremos este extremo.

Entrando ahora en el estudio del juicio del caso, nuestra conclusión final es que, por la evidencia aportada, la corte tenía derecho a declarar que gran parte de las vacas vendidas estaban afectadas de tuberculosis al tiempo de la venta. Independientemente de las manifestaciones de los testigos, o de Alonso, el testigo principal, la preponderancia de la evidencia nos satisface de que la enfermedad no fué contraída después de la venta, por lo menos en lo que respecta a un número de las reses. Existiendo, como existía, la enfermedad en algunos casos en estado avanzado, la corte tenía derecho a aquilatar los hechos en la forma en que lo hizo.

No prestaremos gran atención a las cuestiones morales envueltas. Presumiendo, como debemos, la buena fe de ambas partes, la situación de cada una de ellas era dura. Por ejemplo, si algunas de las reses tenían tuberculosis que no habría de progresar, técnicamente el comprador tenía derecho a rescindir el contrato dentro de cuarenta días. Sin embargo, a él le hubiera sido altamente gravoso que el ganado empezara a morir en su poder después de dos o tres meses de uso, a causa de tuberculosis. La situación del demandado sería parecida.

En resumen, el estudio que hemos hecho de los estatutos y la jurisprudencia nos convence de que la acción entablada en este caso, si hubiera sido incoada a tiempo, sólo podía prosperar en lo relativo a los animales que de fijo estaban afectados de tuberculosis. Al demandado le asistía un derecho claro a insistir en la validez del contrato en cuanto a las reses sanas. Esto nos lleva a otra duda. Si parte del ganado se hallaba en buen estado de salud, y, por consiguiente, hubo alguna causa (*consideration*) para el contrato, podría sostenerse que hubo contrato y que los actores sólo tenían derecho a demandar por una falta parcial de causa.

Supongamos el pago del precio de venta de ciertos terrenos. Resulta que el vendedor no tenía el título de uno de los predios. Creemos que frecuentemente, si no de ordinario, no podría rescindirse o anularse todo el contrato.

Antes de concluir esta opinión deseamos expresar, y esto posiblemente aparece de las consideraciones generales que anteceden, que los demandantes jamás tuvieron derecho a la cancelación de la totalidad del contrato, sino solamente a incoar acción redhibitoria por los animales que padecían o murieron de una enfermedad contagiosa.

Principalmente porque la causa de acción estaba prescrita, y quizá por otros motivos, *la sentencia apelada debe ser revocada y declararse sin lugar la demanda.*