CARLOS MANUEL TORRES, demandante, apelante apelado, *v.* GUILLERMO ARBONA, JR., y GUILLERMO ARBONÁ, padre, demandados, apelado apelante el primero.

Núm. 10392.—*Sometido:* Junio 6, 1951. *Resuelto:* Julio 19, 1951.

770

*Carlos E. Colón,* abogado del apelante apelado ; *Leopoldo Tormes García,* abogado del apelado apelante.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Carlos Manuel Torres radicó demanda en cobro de servicios y otros extremos contra Guillermo Arbona, Jr., y Guillermo Arbona, padre. Alegó en ella que es un corredor de negocios y que allá por el mes de marzo de 1949 los demandados solicitaron sus servicios para que gestionara la venta de una finca de su propiedad que dedican a ganadería y vaquería; que por espacio de cuatro semanas el demandante se dedicó exclusivamente a gestionar la venta de dicha finca, logrando por fin encontrar un comprador para la misma por el precio y condiciones estipulados por los demandados, venta que se llevó a efecto, otorgándose parcialmente la correspondiente escritura, y que fué rescindida veinticuatro horas más tarde; que los demandados se comprometieron con el demandante a satisfacerle $1,650 por sus gestiones, pero en el acto de la venta solicitaron de éste una rebaja a la suma de $1,100, a la cual él accedió, comprometiéndose los demandados a entregarle dicha suma horas más tarde; que después de perfeccionada y consumada la venta el comprador de la finca encontró defectos ocultos en la misma, ya que al entrar en posesión de ella llegó a su conocimiento que la finca estaba en cuarentena por órdenes del Gobierno Insular por existir allí tuberculosis en el ganado vacuno, razón por la cual el comprador hizo saber a los demandados que no podía aceptar la finca ni el ganado incluído en la venta en dichas condiciones y que daba la venta por rescindida; que no habiendo los demandados en momento alguno hecho saber al demandante o al comprador que dicha finca adolecía de tal defecto, el demandante actuó de buena fé, practicó sus gestiones y logró la venta; que los servicios por él prestados valen razonablemente $1,650, precio en que los mismos fueron expresamente pactados; que en el supuesto de que por haberse rescindido la venta el demandante no tuviere derecho al pago de sus honorarios, por la negligencia, omisión, culpa y mala fe de los demandados al

ocultarle los defectos de la finca en cuestión, al prestar él sus servicios ha sufrido daños y perjuicios ascendentes a la suma de $1,650.

Contestaron los demandados negando todos los hechos esenciales de la demanda y alegando como defensa especial que ésta no aduce hechos constitutivos de causa de acción y que de haber intervenido el demandante en el negocio a que alude en su demanda, su derecho a recibir compensación no surgía hasta tanto la finca objeto del negocio se hubiera vendido a la persona con quien dicho demandante hubiera intervenido; que dicho negocio nunca llegó a realizarse y que la intervención del demandante lejos de facilitar el negocio lo que hizo fué estorbarlo e impedirlo.

Luego de suscitarse y resolverse varias cuestiones de derecho que no es menester reseñar, fué el pleito a juicio, aduciendo las partes abundante prueba testifical y documental. El Tribunal a quo dictó sentencia declarando con lugar la demanda y condenando al demandado Guillermo Arbona, Jr., a pagar al demandante la suma de $1,100, más las costas. (¹) Solicitada reconsideración por el demandante a fin de que se le concedieran honorarios de abogado, la misma fué declarada sin lugar. Ambas partes apelaron.

En apoyo de su recurso sostiene el demandado Arbona, Jr., que el tribunal inferior erró (1) al dictar sentencia a base del testimonio del demandante Carlos M. Torres, no obstante haber éste dicho y reconocido que su derecho a cobrar el importe de su comisión surgía cuando el comprador buscado por él comprara, recibiera el título de los bienes, pagara al vendedor la parte del precio acordado y se obligara en forma legal a cumplir las demás condiciones impuestas por el vendedor; (2) al considerar consumado el contrato de compraventa; (3) al resolver que el hato de ganado existente en la

(¹) La demanda fué declarada sin lugar en cuanto al codemandado Guillermo Arbona, padre, por ser éste un mero apoderado de su hijo, quien era el verdadero dueño de la finca y del ganado ofrecidos en venta.

finca "Monserrate" estaba afectado de tuberculosis bovina antes de marzo de 1949 y que los demandados actuaron de mala fe al no informárselo al demandante y al comprador; (4) al condenar al demandado Arbona, Jr., a pagar al demandante la suma de $1,100 por sus alegados servicios profesionales, ya que independientemente de los motivos que tenía el comprador Carlos Santiago, éste nunca estuvo dispuesto, listo y en disposición de comprar la finca "Monserrate" y el hato de ganado en ella existente; y que (5) la sentencia es contraria a la ley y a los hechos.

Como los errores señalados por el demandado-apelante atacan principalmente las conclusiones de hechos del tribunal inferior, pasaremos inmediatamente a reseñar éstas. Ellas fueron:

"1. Que el demandante Carlos Manuel Torres es y ha sido, por más de 15 años, un corredor de negocios de fincas urbanas y rústicas en esta jurisdicción de Ponce, Puerto Rico.

"2. Que allá para el mes de marzo de 1949 los demandados solicitaron los servicios del demandante para que éste les gestionara la venta de la finca-hacienda 'Monserrate', radicada en el barrio Maragüez, de Ponce, y el hato de ganado que en la misma había.

"3. Que las condiciones de esta venta fueron las siguientes:

"Precio de venta, $55,000, de los cuales el comprador debía pagar en efectivo, al momento de otorgarse la escritura, la suma de $10,000; $15,000 los pagaría suscribiendo y entregando 15 pagarés de $1,000 cada uno, para vencer uno cada año, garantizados con hipoteca sobre la misma hacienda 'Monserrate'; y los restantes $30,000 el comprador asumiría la obligación de pagarlos al acreedor hipotecario Herminio Flores, a favor de quien pesa una hipoteca sobre dicha finca, que se encuentra limitada a la referida suma de $30,000.

"4. Que los demandados convinieron con el demandante en darle la suma de $1,100, equivalentes al 2 por ciento del precio de venta, si éste lograba vender . . . . la precitada finca 'La Monserrate', en la antes mencionada suma de $55,000. Original-

mente hubo otros convenios entre los demandados y el demandante, pero éstos fueron modificados por el que consignamos anteriormente. ([2])

"5. Que al momento de contratar los servicios del demandante, los demandados no le hicieron saber a él ni a persona otra alguna, que el hato de ganado existente en la finca 'La Monserrate', el cual se incluía en la operación, estaba en cuarentena del Departamento de Agricultura y Comercio de Puerto Rico, por estar parte del ganado allí existente afectado de tuberculosis bovina.

"6. Que la finca 'La Monserrate' y el hato de ganado allí existente ha estado en cuarentena, afectado por tuberculosis bovina, desde antes de marzo de 1949, hasta la fecha de este litigio.

."7. Que el demandante hizo múltiples gestiones para vender la referida finca y el hato de ganado, utilizando automóvil de su propiedad con sus consecuentes gastos, y finalmente consiguió como comprador de esta finca al señor Carlos Santiago quien ha sido dueño por muchos años de una finca rústica radicada en el Barrio Canas, sitio La Cotorra, de Ponce, y se dedica además al negocio de vaquería.

"8. Que el demandante logró que el señor Carlos Santiago entrara en un contrato de compraventa de la finca 'La Monserrate' con Guillermo Arbona, Jr., incluyendo el ganado existente en dicha finca, por la suma de $55,000. Este contrato se perfeccionó con el consentimiento de las partes, pero no fué posible ratificarlo por escritura pública ante notario debido a la siguiente situación: Comparecieron un Jueves Santo([3]) los demandados vendedores a la oficina del Lic. Hernández Matos para otorgar la escritura de compraventa e hipoteca. Compareció, además, el comprador Carlos Santiago y el acreedor hipotecario Herminio Flores con el propósito de cancelar parcialmente a favor de los vendedores, señores Arbona, el gravamen hipotecario de la finca 'Monserrate' hasta la suma de $30,000. Esta cancelación parcial de hipoteca se efectuó. (Ex. 3 del demandante). La escritura de compraventa e hipoteca también se redactó por el notario Hernández Matos y fué firmada ese día por el vendedor Guillermo Arbona, Jr., no firmándola el comprador Carlos San-

---

([2]) El demandante declaró que originalmente se habló de un 3 por ciento de comisión, pero que al otorgarse el contrato de compraventa se había acordado rebajar su comisión al 2 por ciento.

([3]) 14 de abril de 1949.

tiago debido a que el dinero en efectivo que él venía obligado a entregar en ese acto al vendedor, estaba depositado en el banco y por ser Jueves Santo y el otro día Viernes Santo, el banco ya había cerrado sus puertas al mediodía, por lo cual acordaron las partes entonces que se terminaría de firmar la escritura el lunes próximo. El mismo Jueves Santo el comprador Santiago se personó a la finca 'Monserrate', acompañado del veterinario Dr. Armstrong, quien después de una inspección le manifestó al señor Santiago que el hato de ganado existente en esa finca estaba bajo cuarentena. El señor Santiago, al tener conocimiento de esta situación le notificó ese mismo día al demandante que desistía de la venta. Enterado el codemandado Guillermo Arbona, Jr., de que el comprador desistía del negocio, se personó ante el Lic. Hernández Matos y tachó en el documento de venta su propia firma.

"9. Que los demandados tenían conocimiento de que el hato de ganado existente en la finca 'Monserrate' estaba bajo cuarentena por tuberculosis bovina antes y después del negocio con el señor Carlos Santiago; que los referidos demandados ocultaron este hecho al demandante y al comprador, señor Carlos Santiago. Que la cuarentena del hato de ganado fué la causa que obligó al señor Santiago a rescindir el contrato de compraventa ya perfeccionado."

El tribunal inferior hizo constar en sus conclusiones de derecho que al contratar los demandados los servicios del demandante para que gestionara la venta de la finca con el hato de ganado allí existente, como cuestión de derecho estaban contratando para gestionar la venta de un hato de ganado que por padecer de enfermedad contagiosa no era vendible en forma alguna de acuerdo con la ley, citando el artículo 1383 del Código Civil, ed. 1930 (⁴) y el caso de *Alonso Hermanos* v. *Matos*, 46 D.P.R. 909; (⁵) que los demandados le ocultaron de mala fe al demandante y al comprador el hecho de que el hato

---

(⁴) El artículo 1383 del Código Civil reza en lo pertinente así:

"No serán objeto del contrato de venta los ganados y animales que padezcan enfermedades contagiosas. Cualquier contrato que se hiciere respecto de ellos será nulo."

(⁵) La opinión principal en el caso de *Alonso Hermanos* v. *Matos*, aparece en 46 D.P.R. 470.

de ganado existente en dicha finca padecía de enfermedad contagiosa y estaba en cuarentena, no obstante constarle ese hecho de propio conocimiento, siendo esa ocultación la causa próxima y única para que la venta no se elevara a escritura pública y dando lugar a que fuera rescindida por el comprador; que aún asumiendo que la venta no se consumara el demandante tiene derecho a que se le satisfaga el monto de sus servicios según los mismos fueron contratados, por cuanto si la venta no se llevó a cabo fué únicamente debido a la ocultación que de mala fe hicieron los demandados de la enfermedad contagiosa en el hato de ganado existente en la finca "La Monserrate", y no a ningún acto del corredor.

Las conclusiones de hechos del tribunal sentenciador están plenamente sostenidas por la prueba. Sus conclusiones de derecho también son correctas y la sentencia, como veremos, será confirmada.

El contrato celebrado por demandante y demandados respecto a la venta de la finca y el ganado, por mediación de aquél, fué uno de corretaje.[6] El contrato de corretaje no es sino una figura jurídica, una especialidad comprendida en el mandato, por cuyas genéricas disposiciones ha de regirse. Sentencia del Tribunal Supremo de España de 11 de junio de 1947, Tomo 19, Segunda Serie, Jurisprudencia Civil, pág. 134. Por ende, lo dispuesto por nuestro Código Civil en relación con el mandato es de estricta aplicación al contrato de corretaje. Dispone al efecto nuestro Código Civil en su artículo 1620 que: "Debe . . . el mandante indemnizar al mandatario de todos los daños y perjuicios que le haya causado el cumplimiento del mandato, sin culpa ni imprudencia del mismo mandatario."

Es incuestionable en este caso que de acuerdo con la prueba creída por la corte el contrato de compraventa en cuestión

---

[6] Para una definición de la palabra corretaje véanse Manual de Derecho Mercantil por Lorenzo Benito, Tomo III, pág. 135, ed. 1929; y Enciclopedia Jurídica Española, editada por Francisco Seix, Tomo 9, pág. 704.

quedó perfeccionado.(⁷)   Hubo conjunción de voluntades.
sobre un objeto determinado (la finca y el hato de ganado) y
un precio cierto ($55,000, de los cuales se pagarían $10,000
de contado, $15,000 en pagarés garantizados con segunda hi-
poteca, y $30,000 en una primera hipoteca ya existente).
Consumación de la venta no la hubo, ya que la consumación
surge en esta clase de contratos al momento en que pasa al
poder del comprador la cosa objeto de la compraventa y al del
vendedor el precio.   Enciclopedia Jurídica Española, supra,
Tomo 8, pág. 667.   Veremos, sin embargo, qué efectos puede
tener la no consumación del contrato bajo una situación de
hechos como la aquí envuelta.

Interpretando una situación similar a la que nos ocupa, el
Tribunal Supremo de España, en sentencia de 5 de julio de
1946, Tomo 15, Segunda Serie, Jurisprudencia Civil, pág.
718, resolvió que si bien en su sentencia de 2 de diciembre de
1902 había declarado que no tenía derecho a cobrar su comi-
sión un corredor de fincas, aún habiendo encontrado un posi-
ble comprador de la que tenía encargo de vender, cuando no
se perfeccionó el contrato de compraventa por no llegar los
interesados a un acuerdo al existir entre ellos una diferencia
fundamental acerca del objeto de la venta, *tal doctrina, sin
embargo, no es aplicable en cuantos casos resulte que las
gestiones del corredor dieron el resultado apetecido, perfec-
cionándose el contrato de venta entre el vendedor y el com-
prador, . . . . aun cuando tal contrato sea posteriormente
rescindido, lo que no puede afectar a los derechos del corredor
de fincas, que debe percibir la retribución correspondiente,
conforme al artículo 1711 del Código Civil.*(⁸)   Véase tam-

---

(⁷) El artículo 1339 del Código Civil dispone que:
"La venta se perfeccionará entre comprador y vendedor, y será obli-
gatoria para ambos, si hubieren convenido en la cosa objeto del contrato,
y en el precio, aunque ni la una ni el otro se hayan entregado."

(⁸) El artículo 1711 del Código Civil Español equivale al 1602 del
nuestro, el cual provee que:
"A falta de pacto en contrario, el mandato se supone gratuito.
"Esto no obstante, si el mandatario tiene por ocupación el desempeño
de servicios de la especie a que se refiere el mandato, se presume la
obligación de retribuirlo."

bién la Sentencia de 11 de junio de 1947, supra, en la cual se dijo que "el incumplimiento o cesación voluntarios de la consumación total o parcial del contrato, en cuya celebración intervino el mediador, *no exime a la parte que solicitó la actuación de éste de su obligación de satisfacerle la retribución convenida.*" (Bastardillas nuestras.) Cf. Sentencia de dicho Tribunal de 26 de noviembre de .1919, 148 Jur. Civ. 215; *Vere* v. *Bianchi*, 33 D. P. R. 651; *Bianchi* v. *Vere*, 17 F.2d 22.

■■ La jurisprudencia americana se pronuncia casi unánimemente en el sentido de que en casos de esta índole basta que el corredor a quien se ha encomendado la venta de determinada propiedad encuentre un comprador dispuesto, deseoso y en condiciones económicas de comprar (*ready, willing and able*) (⁹) para que el corredor tenga derecho a la comisión, así como en el sentido de que cuando existiere el pacto de que el corredor tendrá derecho a su comisión cuando quede consumado el contrato, el derecho a la comisión subsiste en aquellos casos en que la no consumación se ha debido al fraude, culpa o mala fe del vendedor. *Dotson* v. *Milliken*, 209 U.S. 237, 52 L. ed. 768; *Crowe* v. *Trickey*, 204 U.S. 228, 51 L. ed. 454, 460; *Kock* v. *Emmerling*, 63 U.S. 69, 16 L. ed. 292; *McGavock* v. *Woodlief*, 61 U.S. 221, 15 L. ed. 884; *Gaston, etc.* v. *Warner*, 260 U.S. 201, 67 L. ed. 210; *Preston* v. *Postel,* 300 Fed. 134; *Avis* v. *Rebhan*, 267 Pac. 898; *Jones* v. *Briggs,* 132 Atl. 817. Véanse también 8 Am. Jur., págs. 1066 y 1097, secciones 141 y 184; 20 A.L.R. 294; 51 A.L.R. 1392; 156 A.L.R. 1398; 169 A.L.R. 605. Desde luego, si el corredor o presunto comprador tenían conocimiento de los defectos o vicios de que adolecía la cosa el véndedor no es responsable, puesto que entonces no puede imputársele mala fe, culpa o negligencia. Véanse casos antes citados. Como la prueba creída por el tribunal inferior fué al efecto de que con anterioridad al momento en que los demandados solici-

---

(⁹) De la prueba creída por la corte puede concluirse fácilmente que Carlos Santiago fué un comprador dispuesto, deseoso y en condiciones económicas de comprar.

taron los servicios del demandante, al igual que posteriormente, ellos tenían conocimiento de que el hato de ganado en cuestión se hallaba padeciendo de tuberculosis bovina y de que tanto el corredor como el comprador desconocían ese hecho, dicho Tribunal pudo concluir que la no consumación del contrato se debió a la mala fe o culpa de los demandados.

Estamos enteramente de acuerdo con los principios de derecho enunciados por la Corte Suprema de España y por la jurisprudencia americana en los casos arriba citados. Habiendo quedado el contrato de compraventa perfeccionado, siendo Carlos Santiago un comprador dispuesto, deseoso y en condiciones económicas de comprar y habiéndose concluído que la venta no se consumó debido a la mala fe o culpa de los demandados, en armonía con esos principios el demandante tiene derecho a percibir por vía de indemnización la comisión pactada. Ello es así, aún si se interpretara que el convenio entre las partes fué que el corredor no percibiría su comisión hasta tanto quedara consumado el contrato.

En lo que a la apelación del demandante concierne, bastará decir que la condena en honorarios de abogado es discrecional en el tribunal sentenciador, y que no creemos que en este caso se abusara de tal discreción.

*Toda vez que los errores alegados por una y otra parte no han sido cometidos, la sentencia apelada será confirmada.*