**PREMIUM FINANCING SPECIALISTS, INC., Appellant,**

v.

**TRANSPORTATION SPECIALISTS, INC., Will Darrah & Associates, Inc. and Underwriters Members of Lloyd's of London, Appellees.**

No. 84–2086.

United States Court of Appeals, Eighth Circuit.

Submitted April 8, 1985.

Decided July 19, 1985.

Warren E. Slagle, Kansas City, Mo., for appellant.

Allan W. Horne, Little Rock, Ark., for appellees.

Before ROSS and JOHN R. GIBSON, Circuit Judges, and MEREDITH,* District Judge.

## PER CURIAM.

This case comes before us from a grant of a motion for summary judgment in favor of defendants, Will Darrah & Associates (hereinafter Darrah) and Underwriters Members of Lloyd's of London (hereinafter Lloyd's). The plaintiff, Premium Financing Specialists (hereinafter PFS) appeals the grant of summary judgment on the basis that genuine issues of material fact are present which should be resolved at trial. We remand to the district court for further fact findings.

## FACTS

Because the facts are somewhat convoluted at this stage in the proceedings, it is helpful to identify the parties and their respective roles in this transaction. PFS is in the business of financing insurance agreements. Riggins Trucking, Inc. (hereinafter Riggins), a trucking company, allegedly needed financing to pay for an insurance premium. Lloyd's of London is an underwriter and Darrah acts as general agent for Lloyd's. Jim Tankersley,[1] owner of Transportation Specialists (hereinafter Transportation), acted as the alleged intermediary among PFS, Lloyd's, Darrah, and Riggins. Transportation negotiated a deal wherein PFS agreed to finance insurance premiums for Riggins through Darrah and Lloyd's. The total annual premium was $122,000.00. Of this amount $30,500.00 was to be a downpayment,[2] and the remainder of $96,478.83 ($91,500.00 plus $4,978.83 in interest) was to be repaid in nine installments of $10,719.87 each.

Transportation initiated negotiations among these parties for the financing of insurance premiums. PFS received telephone verification of quoted prices and other policy information from Martin Dawkins, a Darrah representative. Following this telephone verification, PFS then sent a check to Transportation for the total annual premium of $122,000.[3] Transportation, however, proceeded to pay Darrah on a monthly, not annual, basis.

After the money had been disbursed by PFS to Transportation, Darrah received a copy of the financing agreement. One provision in the agreement provided that return premiums would be sent to PFS. Darrah, after receiving a copy of the agreement, sent a letter to PFS which indicated that return premiums would be sent to the entity paying Darrah, which in this case

---

\* The HONORABLE JAMES H. MEREDITH, Senior Judge, United States District Court for the Eastern District of Missouri, sitting by designation.

1. Tankersley, owner of Transportation, has evidently absconded with some of the funds from this transaction and is no longer in the State of Arkansas.

2. It is unclear from the record whether the downpayment was paid by PFS or Riggins.

3. PFS's interest in the unearned premiums was to be its collateral.

would be Transportation, not PFS. The district court found, therefore, that no unearned premiums in favor of PFS existed.

Default occurred after the first three installments were made. After PFS sued Riggins it found out that Riggins' signature on the financing agreement was forged. PFS then agreed to dismiss Riggins from suit and Riggins assigned its interest to PFS.

The defendants, Lloyd's and Darrah, filed a motion for summary judgment. The district court granted this motion and PFS appeals.

■ In reviewing a dismissal on the basis of summary judgment, our review is limited to whether there exists any evidence that creates an issue as to any material fact for the jury to decide. *Hartford Accident & Indemnity Co. v. Stauffer Chemical Co.*, 741 F.2d 1142, 1144 (8th Cir.1984); FED.R.CIV.P. 56(c). We review the record based on the facts presented to the trial court, keeping in mind that the evidence must be viewed in favor of the party opposing the motion for summary judgment and the benefit of all favorable inferences drawn from the record must be given to that party. *St. Louis County Bank v. United States*, 674 F.2d 1207, 1209 (8th Cir.1982); *Ralphs Distributing Co. v. AMF, Inc.*, 667 F.2d 670, 672 (8th Cir.1981).

**CONTRACT**

■ During oral argument additional facts emerged. Darrah announced that it had concluded that two separate contracts existed, one numbered LPN 4182 and another numbered LPN 1482. Darrah contends that LPN 4182 is the contract in question in this case. It states that LPN 1482 is a separate policy which Riggins was involved in and paid money on. Darrah further urges that PFS is confusing the transactions of these two *separate* policies, and that LPN 1482 is not at issue in this case.[4]

PFS, however, argues that these two numbers refer to the same policy. Dawkins, Darrah's treasurer, stated in deposition testimony that these numbers were simply transposed. If that was true, any payments made by Riggins were on the policy in question. Therefore, it is urged by PFS that it does have a right to Riggins' interest in the premiums.[5]

It is quite clear that factual disputes exist on this issue. The defendants have not shown with certainty that Riggins had nothing to assign. Nor have they shown that PFS had no right under any theory to these unearned premiums.[6] And finally, there is a factual dispute concerning the existence of one or two contracts and their applicability to this case.

**AGENCY**

PFS asserts that an agency relationship exists between Transportation and Darrah. (Darrah was unable to produce any written contract between itself and Transportation.) PFS states that Carolyn Caperton, secretary to PFS, testified that in a conversation with Dawkins (Darrah) she was told that Premium could pay Tankersley (Transportation). The definition of agency under Arkansas law is:

> The relation of agency is created as the result of conduct by two parties manifesting that one of them is willing for the other to act for him * * *, and the agent must act or agree to act on the principal's behalf and subject to his control.

4. We note that counsel for Darrah failed to inform this court of the confusion over the possibility of two different contracts until the oral argument. Since this issue goes to the heart of the case, we feel compelled to remand it to the district court for consideration.

5. The evidence shows that Riggins paid some money but it is not clear to whom or on which contract this money was paid. Riggins had done business in the past with Transportation and Darrah, but Riggins' actual role in this deal remains somewhat of a mystery. Consequently, it is unclear from the evidence whether Darrah had a legal duty to insure Riggins. If Darrah has this duty, then PFS would receive an interest following the assignment. This question needs to be further developed on remand.

6. There is no evidence as to the amount of unearned premium which is due and owing. Darrah claims there is none.

*Hinson v. Culberson-Stowers Chevrolet, Inc.,* 244 Ark. 853, 427 S.W.2d 539, 541 (1968), quoting from RESTATEMENT OF AGENCY, § 1, comment A. If PFS's version of the facts is to be believed, then there is a possibility that agency could be proved at trial.

PFS argues that it was told by Dawkins to pay the "producing agent," Dawkins. In other words, PFS is arguing that it has a claim for conversion against Darrah/Lloyd's if in fact Transportation was authorized to receive money on behalf of Darrah. In addition to this phone call allegedly giving PFS permission to pay Transportation, PFS argues that its financing agreement said "pay the agent" and Darrah accepted this language when the contract was signed.[7] This issue is clearly disputed as Darrah contends it never agreed to this provision.

Darrah argues that an agreement between Transportation and Darrah existed which showed Transportation to be an independent contractor. However, Darrah was unable to produce that document and instead submitted a standard form agreement which was allegedly like the one signed by Transportation. PFS argues that this form has not been proved to be like the one signed by Transportation. There is no evidence as to when it was signed or if other standard forms existed.

## CONCLUSION

Because there are clearly factual issues which have not been resolved, we remand this case to the district court with directions to attempt to resolve the following factual issues on the basis of the record as it may be supplemented.

(1) Whether Darrah/Lloyd's had a duty to insure Riggins.

(2) Whether an agency relationship existed in view of PFS's direct contract with Darrah regarding annual premium quotations.

(3) Whether there exists one or two contracts and whether Riggins made pay-

ments on the contract involved in this case.

(4) Whether ARK.STAT.ANN. § 66–2918 is applicable and how it affects this case.

The district court may also address other issues that arise on remand. If the district court finds that there exists a genuine factual dispute as to any of these issues, or any other material issue, summary judgment is not to be entered and the case must proceed to trial.

Remanded with instructions.

---

7. PFS also makes an argument that agency is established under ARK.STAT.ANN. § 66–2918, the Arkansas surplus lines statute. We do not have facts before us sufficient enough to rule on this issue. The district court should deal with the question on remand.