EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Edish Meléndez Guzmán<br><br>Apelante<br><br>v.<br><br>Felipe Berríos López<br><br>Apelado | Apelación<br><br>2008 TSPR 3<br><br>173 DPR \_\_\_\_ |

Número del Caso: AC-2007-34

Fecha: 16 de enero de 2008

Tribunal de Apelaciones:

      Región Judicial de Mayagüez-Aguadilla, Panel IX

Juez Ponente:

      Hon. Héctor Cordero Vázquez

Abogado de la Parte Peticionaria:

      Lcdo. Basilio Torres Colón

Abogado de la Parte Recurrida:

      Lcdo. Felipe Negrón Martínez

Materia: Incumplimiento de Contrato

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Edish Meléndez Guzmán

    Apelante

        vs.                   AC-2007-34        APELACIÓN

Felipe Berríos López

    Apelado

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 16 de enero de 2008

El 25 de noviembre de 1988, Felipe Berríos López y José A. Colón Guzmán --este último en su carácter de corredor de bienes raíces-- suscribieron un contrato de corretaje que titularon "Autorización de Venta Exclusiva". En el mismo, Berríos López autorizó a Colón Guzmán a vender unos bienes inmuebles de su propiedad: el Centro Comercial Berríos Cash and Carry, ubicado en Villalba, y Berríos Cash and Carry, ubicado en Juana Díaz. Entre las cláusulas y condiciones del referido contrato, éstos acordaron que la autorización de venta sería por un término de ciento veinte días, renovable por plazos iguales si las partes no notificaban, por correo

certificado, su interés de desistir del referido acuerdo. Además, pactaron una comisión de cinco por ciento del total de la venta, la cual sería pagada a Colón Guzmán una vez se firmara la escritura de compraventa. En la cláusula tercera del mencionado contrato, acordaron que toda transacción relativa a la propiedad objeto del acuerdo sería canalizada, exclusivamente, a través de Colón Guzmán.

El 19 de mayo de 1989, Colón Guzmán le remitió una carta a Berríos López con una lista de clientes potenciales para la venta de la propiedad; entre ellos se encontraba José Antonio Martínez. El 8 de agosto de 1989, Berríos López se acogió a los beneficios de la Ley de Quiebras. La Corte de Quiebras emitió su decreto final el 30 de septiembre de 1993. El 31 de marzo de 1994, Berríos López suscribió una escritura pública mediante la cual vendió la propiedad a Martínez y su esposa por $500,000.

El 11 de julio de 2000, Colón Guzmán radicó una demanda, sobre incumplimiento de contrato y daños y perjuicios, contra Berríos López, ante la Sala de Ponce del Tribunal de Primera Instancia. En la misma alegó que éste nunca le notificó sobre la venta de la referida propiedad, en violación a la autorización del contrato de venta exclusiva suscrito en 1988. A raíz de tal incumplimiento, solicitó el pago de la comisión pactada, ascendente al cinco por ciento del total de la venta de la

propiedad y el resarcimiento por los daños, sufrimientos y angustias mentales que le ocasionó dicho incumplimiento.

Berríos López contestó la demanda negando las alegaciones fundamentales de la misma. Entre sus defensas afirmativas adujo que la demanda estaba prescrita. Posteriormente, el 10 de julio de 2002, Berríos López solicitó formalmente la desestimación de la demanda bajo el fundamento que la causa de acción prescribió bajo el Artículo 1867 del Código Civil. En apoyo a su alegación, adujo que la propiedad fue vendida el 31 de marzo de 1994 y no fue hasta el 11 de julio de 2000 que Colón presentó la demanda de epígrafe. Argumentó que Colón Guzmán, como corredor de bienes raíces, es un "agente" para efectos del Artículo 1867 del Código Civil, 31 L.P.R.A. §5297, por lo cual no le era de aplicación el término de quince años provisto en el Artículo 1864 del Código Civil, 31 L.P.R.A. §5294, sino el plazo trienal del Artículo 1867 del referido Código.

Celebrada la vista en su fondo del caso, el 9 de noviembre de 2004, el tribunal de instancia dictó sentencia condenando a Berríos López al pago de $25,000, los intereses legales, así como costas, gastos y honorarios de abogado. El foro primario concluyó que Berríos López incumplió con lo pactado en el contrato de corretaje, por lo cual, procedía la indemnización por

concepto de daños y perjuicios y el pago de la comisión adeudada.[1]

Inconforme con tal determinación, Berríos López recurrió al Tribunal de Apelaciones.[2] Tras evaluar las posiciones de las partes, el foro apelativo intermedio dictó sentencia revocando la decisión del tribunal de instancia. De entrada, destacó dicho tribunal que el foro de instancia había errado al no atender la controversia relativa a la prescripción. Resolvió que un corredor de bienes raíces es considerado un agente bajo el Artículo 1867 del Código Civil. Como consecuencia, Colón Guzmán, quien advino en conocimiento de la venta de la propiedad en el 1994, tenía tres años desde tal fecha para exigir el cumplimiento del pago por los servicios prestados. Tomando en cuenta que la demanda fue presentada transcurridos más de seis años desde la venta de la propiedad de Berríos López, la causa de acción estaba prescrita. Adicionalmente, señaló que no se demostró que Colón Guzmán hubiese efectuado reclamaciones extrajudiciales que interrumpieran el término prescriptivo antes reseñado, ya que no especificó en qué consistieron los alegados trámites efectuados interruptores de la prescripción.

---

[1] No hizo alusión alguna a la moción de desestimación presentada por Berríos.

[2] Luego de presentado dicho recurso, Colón Guzmán falleció, ante lo cual su madre, Edish Meléndez Guzmán, le sustituyó en el pleito.

De tal determinación, la madre de Colón Guzmán acudió ante este Tribunal mediante recurso de apelación.[3] Planteó que erró el Tribunal de Apelaciones al:

> …Concluir que la opinión de un tratadista español prevalece sobre la sentencia del Tribunal Supremo de España;
> …Determinar que incurrió en incuria por no haber efectuado gestión alguna para cobrar la comisión pactada;
> …Examinar selectivamente los pasajes de la vista en su fondo;
> …Aplicar la Ley 10 de 26 de abril de 1994 en lugar de la Ley 139 de 14 de junio de 1980;
> …Ignorar que el contrato es la ley entre las partes;
> …Ignorar que el desconocimiento de la ley no exime del cumplimiento con la misma;
> …No considerar el carácter sui generis del contrato de corretaje, al cual no le son de aplicación de manera estricta las disposiciones del Código Civil;
> …No tomar en cuenta que el contrato suscrito entre las partes es uno de venta exclusiva que se regía por cláusulas especiales;
> …Imponerle a uno de los contratantes la responsabilidad del perfeccionamiento de un contrato bilateral;
> …No considerar que cumplió con todo lo pactado en el contrato mientras Colón utilizó maquinaciones insidiosas y dolo para incumplir con lo pactado;
> …Emitir una sentencia inconsistente con lo resuelto por la Región Judicial de Guayama del Tribunal de Apelaciones, en _Shopping Center Realty v. Plaza Guayama_, KLAN0401218.

_Expedimos_ el recurso. Estando en condiciones de resolver el recurso radicado, procedemos a así hacerlo.

I

Es norma trillada que las acciones prescriben por el mero transcurso del tiempo fijado por la ley. Artículo 1861 del Código Civil, 31 L.P.R.A. §5291. La figura de la

---

[3] Es preciso aclarar que acogemos el presente recurso como uno de _certiorari_, por ser éste el apropiado.

prescripción es materia de derecho sustantivo, y no procesal, regida expresamente por nuestro Código Civil. Sánchez v. Aut. de Puertos, 153 D.P.R. 559 (2001); Meléndez v. El Vocero de P.R., 144 D.P.R. 389 (1997); García v. E.L.A., 135 D.P.R. 137 (1994). Según bien señala Castán Tobeñas, "[e]l tiempo, con el concurso de otros factores, puede dar lugar a la adquisición de ciertos derechos, como consecuencia de su ejercicio continuado, o a la extinción de un derecho, a consecuencia de su no ejercicio continuado." J. Castán Tobeñas, Derecho Civil Español, Común y Foral, 14ta Ed., Madrid, Ed. Reus, 1984, pág. 963.

La prescripción es una defensa afirmativa que debe plantearse de forma expresa y oportuna, o de lo contrario, se entiende renunciada. Álamo Pérez v. Supermercado Grande, 158 D.P.R. 93 (2002); Meléndez v. El Vocero de P.R., ante; Regla 6.3 de Procedimiento Civil, 32 L.P.R.A. Ap.III R. 6.3.

En ocasión de que el transcurso del tiempo extinga un derecho, nos encontramos ante la prescripción extintiva. En ésta, "la Ley fija un límite de tiempo para el ejercicio de los derechos, transcurrido el cual establece una presunción de renuncia o abandono de la acción para reclamarlos." J. Puig Brutau, Caducidad, Prescripción Extintiva y Usucapión, 3ra Ed., Barcelona, Ed. Bosch, 1996, pág. 92. La prescripción extintiva también persigue castigar la inercia en el ejercicio de los derechos.

Suárez v. Figueroa, 145 D.P.R. 142 (1998); Meléndez v. El Vocero de P.R, ante. A tales efectos, hemos expresado que "el transcurso del periodo de tiempo establecido por ley sin que el titular del derecho lo reclame, da lugar a la presunción legal de abandono del mismo…", a la vez eliminando la incertidumbre de las relaciones jurídicas. García v. E.L.A., ante, pág. 142.

Así, cuando transcurre el periodo de tiempo que fija la ley se extingue la acción para hacer efectivo el derecho en cuestión y el deudor queda liberado de su obligación en tanto puede negarse a cumplir con la misma bajo el fundamento de que ésta fue reclamada tardíamente. García v. E.L.A., ante. La prescripción extintiva opera en torno a los derechos reales y a los de crédito. Castán Tobeñas, op. Cit., pág. 965.

Castán, citando a Coviello, señala tres requisitos para que se configure la prescripción extintiva, a saber: (1) la existencia de un derecho que se pueda ejercitar, (2) la falta de ejercicio o inercia por parte del titular y (3) el transcurso del tiempo determinado en la ley. Castán Tobeñas, op. Cit., pág. 973; Véase además J.R. Vélez Torres, Derecho de Obligaciones: Curso de Derecho Civil, 2da Ed., San Juan, Ed. Programa de Educación Jurídica Continua Facultad de Derecho U.I.A, 1997, pág. 371.

Nuestro Código Civil establece los términos prescriptivos particulares para las diversas acciones,

tanto las reales como las personales. En lo pertinente, el Artículo 1864 de nuestro Código Civil dispone que las acciones personales, que no tienen señalado un término especial de prescripción, prescriben a los quince años. De otro lado, el Artículo 1867, en su Inciso (1), establece un término prescriptivo de tres años para el cumplimiento de la obligación de pagar los honorarios, gastos y desembolsos que hayan realizado los jueces, abogados, notarios, peritos, agentes y curiales en el desempeño de sus cargos.[4] El referido plazo comenzará a contarse desde la fecha en que dejaron de prestarse los servicios pactados.

Puig Brutau señala que es razonable imponer un término más corto para el reclamo de la remuneración de servicios o de trabajo en vista de que un profesional debe ser diligente en el cobro de su retribución. Puig Brutau, Caducidad, op. Cit., pág. 171. Además, el referido término trienal es de aplicación a "créditos cuyo pago es normal que se haga de manera rápida, inmediata o casi inmediata…" por surgir de deudas de la vida cotidiana. Vélez Torres, Derecho de Obligaciones, op. Cit., pág. 393, citando a L.

---

[4] Conforme al Diccionario de la Real Academia Española, un agente, en términos generales, es el "que obra o tiene virtud de obrar" o "que tiene a su cargo una agencia para gestionar asuntos ajenos o prestar determinados servicios". Por su parte, define un agente comercial como aquel que profesionalmente gestiona por cuenta ajena, mediante comisión, y sujeto a las condiciones estipuladas por el que representa. Mientras, el agente de negocios tiene por oficio gestionar negocios ajenos.

Díez-Picazo, La Prescripción en el Código Civil, Barcelona, Ed. Bosch, 1964, págs. 199-200.

Ahora bien, la prescripción de un derecho es lo excepcional, en vista de que su ejercicio o conservación es lo normal. Meléndez v. El Vocero de P.R, ante; Galib Frangie v. El Vocero de P.R., 138 D.P.R. 560 (1995). Como corolario de lo anterior, nuestro ordenamiento jurídico permite la interrupción de los términos prescriptivos. Éstos se entienden interrumpidos cuando el titular del derecho lleva a cabo gestiones que demuestran su interés en reclamar su acreencia. Puig Brutau, Caducidad, op. Cit., pág. 92. Sobre el particular, el Artículo 1873 del Código Civil, 31 L.P.R.A. §5303, dispone que "[l]a prescripción de las acciones se interrumpe por ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor." Una vez el término queda interrumpido, comenzará a computarse nuevamente desde el momento en que se produce el acto interruptor. Sánchez v. Aut. de los Puertos, ante; Suárez v. Figueroa, ante; García v. E.L.A., ante.

No existen requisitos de forma para una reclamación extrajudicial, por lo cual, ésta puede ser verbal o escrita, siempre que sea efectuada dentro del término prescriptivo. Vélez Torres, Derecho de Obligaciones, op. Cit., pág. 381; Sánchez v. Aut. de los Puertos, ante; Maldonado v. Russe, 153 D.P.R. 342 (2001); De León v.

Caparra Center, 147 D.P.R. 797 (1999); Galib Frangie v. El Vocero de P.R., ante. Incluso, la ley no limita los actos que pueden ser interruptores, admitiendo todos aquellos en que la voluntad del acreedor quede patente. Galib Frangie v. El Vocero de P.R., ante.

Sin embargo, hemos destacado que para que surta un efecto interruptor, la reclamación extrajudicial debe ser una manifestación inequívoca de quien, amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo. Sánchez v. Aut. de los Puertos, ante; De León v. Caparra Center, ante; Martínez v. Soc. de Gananciales, 145 D.P.R. 93 (1998); Meléndez v. El Vocero de P.R, ante; García v. E.L.A., ante; Galib Frangie v. El Vocero de P.R., ante.

En Sánchez v. Aut. de los Puertos, ante, reiteramos los requisitos para que una reclamación extrajudicial interrumpa un término prescriptivo, a saber, (1) que se realice antes de la consumación del plazo; (2) que se haga por el titular del derecho o acción; (3) que el medio utilizado sea adecuado o idóneo; y (4) que exista identidad entre el derecho reclamado y aquél afectado por la prescripción. Véase además, Maldonado v. Russe, ante; Galib Frangie v. El Vocero de P.R., ante; De León v. Caparra Center, ante. Le corresponde al titular del derecho demostrar el cumplimiento con dichos requisitos. Sánchez v. Aut. de los Puertos, ante.

De otra parte, en Díaz de Diana v. A.J.A.S. Ins. Co., 110 D.P.R. 471, 476 (1980), citando a Díez Picazo,

adoptamos la norma de que una reclamación extrajudicial "es un acto de declaración de voluntad de naturaleza recepticia. Debe ser dirigido al sujeto pasivo del derecho *y debe ser recibido por éste*. De aquí que no pueda reconocerse eficacia interruptiva a los actos de afirmación de un derecho que no sean dirigidos al obligado o sujeto pasivo de la acción, sino a terceros, a personas distintas, a la generalidad." Véase Zambrana Maldonado v. E.L.A., 129 D.P.R. 740 (1992).

II

Hoy nos corresponde resolver si un corredor de bienes raíces es un "agente" para efectos del Artículo 1867 del Código Civil y, como consecuencia, le es de aplicación el plazo trienal allí establecido para reclamar el pago de sus comisión y otros haberes por sus servicios ó si, por el contrario, se trata de una acción personal a la cual le es de aplicación el plazo prescriptivo de quince años que dispone el Artículo 1864 del Código Civil.

En su recurso la peticionaria Meléndez argumenta, en síntesis, que Berríos López incumplió con el contrato de corretaje que suscribió con Colón Guzmán en 1988, al nunca notificarle sobre la venta de la propiedad a Martínez, uno de los clientes potenciales provisto por Colón mediante listado que éste le entregó a Berríos el 9 de mayo de 1989. Por tal motivo, Meléndez aduce que Berríos López le adeuda el pago de la comisión de 5 por ciento del precio

total de la venta del inmueble, los intereses acumulados, así como una compensación por concepto de angustias mentales, daños y perjuicios.

Ahora bien, ante la defensa afirmativa de prescripción que fue planteada por Berríos López en su contestación a la demanda y posterior solicitud de desestimación, Meléndez alega que, en el caso de marras, es de aplicación el plazo prescriptivo de quince años provisto en el Artículo 1864. En apoyo a su argumento, cita fuentes españolas para argüir que, contrario a lo alegado por Berríos López, un corredor de bienes raíces no es un "agente" para efectos del plazo trienal del Artículo 1867 del Código Civil.

Más aún, sostiene que el Código Civil es de naturaleza supletoria y resulta innecesario acudir a sus disposiciones cuando existen cláusulas especiales en el contrato de corretaje que rigen, de forma primaria, la relación jurídica entre las partes. En particular, incorrectamente sostiene que el asunto de la prescripción del contrato estaba cubierto en el contrato de corretaje "de manera detallada".

En oposición a lo antes expuesto, Berríos López admite que incumplió con el contrato de corretaje al venderle la propiedad a Martínez y no pagarle la comisión pautada a Colón Guzmán. Sin embargo, señala que Colón Guzmán no fue diligente en el reclamo del pago de los honorarios que le eran adeudados porque presentó la

demanda transcurridos más de seis años desde la venta del inmueble y nunca efectuó gestiones para cobrar su acreencia con anterioridad a la presentación de la susodicha demanda. En particular, arguye que la reclamación de los demandantes está prescrita porque se trata del cobro de los servicios prestados por un corredor de bienes raíces, el cual es considerado un "agente" bajo el Artículo 1867 del Código Civil y al cual le es de aplicación el término trienal que dispone dicho artículo. Citando tratadistas españoles, indica que un corredor de bienes raíces es un "agente" en tanto presta un servicio de intermediario para gestionar negocios ajenos.

Si bien es cierto que el Artículo 1864 del Código Civil establece un término prescriptivo de quince años para aquellas acciones personales que no tengan un término especial de prescripción, hemos señalado que "éste término <u>no</u> aplica automáticamente cuando la ley no fija un término particular para una acción personal, <u>pues en tales situaciones debemos utilizar inicialmente el término de mayor analogía</u>." Véase: <u>Maldonado v. Russe</u>, ante, pág. 348. Como consecuencia de lo anterior, al determinar el plazo prescriptivo para reclamar el pago de las comisiones pactadas en un contrato de corretaje, <u>primero es preciso evaluar los orígenes y características de dicha clase de contrato</u>.

III

A

Este Tribunal ha atendido controversias relativas al contrato de corretaje en varias ocasiones. Sobre ello, hemos señalado que el contrato de corretaje es uno de naturaleza *sui generis,* que a pesar de no estar regulado de forma expresa en nuestro Código Civil, está íntimamente relacionado al contrato de mandato y se rige por las disposiciones del Código Civil relativas a dicho tipo de contrato especial. Véase: Colegio Int. Sek PR, Int. V. Escriba, 135 D.P.R. 647 (1994); Dumont v. Inmobiliaria Estado, 113 D.P.R. 406 (1982); Torres v. Arbona, 72 D.P.R. 769 (1951).

En ausencia de disposiciones expresas regulando el contrato de corretaje, en Dumont v. Inmobiliaria, ante, adoptamos lo expresado por Castán Tobeñas, op. Cit., pág. 567, a los efectos de que:

> [e]l contrato de corretaje se ha de regir por las normas establecidas por las partes […] y, en su defecto, como el Código Civil no lo regula en particular, habrá que suplir el vacío legal aplicando las disposiciones generales contenidas en los títulos I y II del libro IV del mismo Código […], los usos y costumbres propios de su naturaleza […] y, en cuanto en cada caso puedan ser oportunas, las reglas que le sean afines de aquellos contratos típicos con los que guarda íntima relación, como el mandato, la comisión mercantil y el arrendamiento de obras y servicios. (Énfasis suplido.)

Véase Colegio Int. Sek PR, Int. V. Escriba, ante; R. Cintrón Perales, El contrato de corretaje de bienes raíces

y de opción de compraventa de propiedades residenciales,
1ra Ed., San Juan, Ed. Situm, 2006, págs. 3-4.

No obstante sus expresiones en torno a las analogías
entre los contratos de corretaje y mandato, Castán Tobeñas
también señala que aún cuando el contrato de corretaje se
asemeja a los contratos de mandato y a los arrendamientos
de obras y servicios, también posee características que le
diferencian claramente. Castán Tobeñas, op. Cit., pág.
565. A modo de ejemplo, distinto al mandatario, el
corredor no participa en la contratación ni funge como
representante. Del mismo modo, a diferencia del
arrendamiento de obras y servicios, el mediador o corredor
no tiene derecho a la retribución si no se celebra el
contrato que le fue encargado. J. Santos Briz y otros,
Tratado de Derecho Civil: Teoría y Práctica, 1ra Ed.,
Barcelona, Ed. Bosch, 2003, pág. 462.

Frecuentemente, la mediación y los contratos de
corretaje también han sido comparados y discutidos de
forma conjunta. Díez-Picazo resalta que el Código Civil no
regula la prestación de servicios por parte de los
mediadores o los corredores. Asimismo, ni el mediador ni
el corredor fungen como representantes de otro. Además,
ambos tienen el derecho a la retribución sólo cuando el
contrato principal ha sido realizado. L. Díez-Picazo y A.
Gullón, Sistema de Derecho Civil, 6ta Ed., Ed. Tecnos,
Madrid, 1989, pág. 479; Véase J. Santos Briz, Derecho
Civil: Teoría y Práctica, Ed. Revista de Derecho Privado,

Madrid, T. IV, 1973, págs. 455-57; J Santos Briz, Tratado

de Derecho Civil, op. Cit., págs. 461-62.⁵

En un intento de llenar la laguna jurídica existente

en torno al contrato de corretaje, los tratadistas

españoles lo han definido como aquel en cuya virtud una de

las partes (corredor) se compromete a indicar a la otra

(comitente) la oportunidad de concluir un negocio jurídico

con un tercero o a servirle de intermediario a esta

conclusión, a cambio de una retribución, comúnmente

llamada comisión. F. Puig Peña, Compendio de Derecho Civil

Español, 3ra Ed., Madrid, Ed. Pirámides, 1976, pág. 210;

Castán Tobeñas, op. Cit., pág. 563; J. Puig Brutau,

Fundamentos de Derecho Civil: Contratos en Particular, 2de

Ed., Ed. Bosch, 1982, T. II, Vol. II, pág. 480; Díez-

Picazo, Sistema de Derecho Civil, op. Cit., pág. 480.

Dicho contrato ha sido descrito como uno atípico,

innominado, principal, consensual y bilateral, a través

del cual las partes se imponen obligaciones recíprocas

---

⁵ Por su parte, en el derecho anglosajón, el mandato es
conocido como la figura de la agencia o "agency", relación
fiduciaria mediante la cual una persona se obliga a actuar
por la otra. R. Vélez Torres, Curso de Derecho Civil:
Derecho de Contratos, San Juan, Ed. Revista Jurídica
U.I.P.R., 1990, T. IV, Vol. II, pág. 434; Cintrón Perales,
op. Cit., pág. 52. Sobre el particular, la jurisprudencia
federal ha señalado: "[t]he relation of agency is created
as the result of conduct by two parties manifesting that
one of them is willing for the other to act for him, and
the agent must act or agree to act on the principal's
behalf and subject to his control." Premium Financing
Specialists v. Transportation Specialist, 768 F.2d 282
(1985), citando a RESTATEMENT OF AGENCY § 1, comment A;
Véase Rufenacht v. Iowa Beef Processors, 656 F.2d 198
(1981).

basadas en la prestación de los servicios de corretaje. Puig Peña, op. Cit., págs. 211-12; Castán Tobeñas, op. Cit., pág. 566; Santos Briz, Tratado de Derecho Civil, op. Cit., pág. 462; Díez-Picazo, Sistema de Derecho Civil, op. Cit., pág. 480.

Vélez Torres indica que en esencia, el corredor de bienes raíces se obliga, en virtud de un contrato de mandato, a gestionar clientes. Consecuentemente, en tanto el corredor tiene por ocupación el desempeño de servicios de la especie a que se refiere el mandato, se presume la obligación de retribuirlo bajo el Artículo 1602 de nuestro Código Civil, 31 L.P.R.A. §4423. Vélez Torres, Curso de Derecho Civil, op. Cit., pág. 420.

Surge de todo lo antes expuesto que el contrato de corretaje posee características que le asemejan al contrato de mandato, a la mediación y al arrendamiento de obras y servicios. Sin embargo, también retiene características particulares a su género que procuran una evaluación pormenorizada de las normas que le son de aplicación. De ahí que debemos analizar las diversas vertientes jurídicas que han sido desarrolladas en torno a cuál es el término prescriptivo para cobrar la comisión pactada en un contrato de corretaje.

IV

Al discutir el plazo trienal del Artículo 1.967, disposición equivalente a nuestro Artículo 1867, Díez-

Picazo indica que dicho término prescriptivo es de aplicación a las gestiones dirigidas a obtener retribución o remuneración por servicios que han sido prestados por el acreedor. L. Díez-Picazo, La Prescripción en el Código Civil, Barcelona, Ed. Bosch, 1964, pág. 200; Véase Puig Brutau, Caducidad, op. Cit., Pág. 170-71. Señala, además, que el referido artículo de ley denota una diferencia entre los servicios prestados por un profesional y aquellos que rinde un no profesional. Sobre ello, apunta que si los servicios fueron prestados por un profesional, el crédito para cobrar la acreencia prescribe a los tres años desde que cesaron los servicios mientras los servicios prestados por no profesionales prescriben a los quince años. Díez-Picazo, La Prescripción, op. Cit., pág. 201; Véase Vélez Torres, Derecho de Obligaciones, op. Cit., pág. 393-94. La aplicación del plazo acortado de tres años responde a la diligencia que debe desplegar un profesional en el cobro de su retribución. Díez-Picazo, La Prescripción, op. Cit., pág. 200; véase Puig Brutau, Caducidad, op. Cit., Pág. 171. A modo de ejemplo, Díez-Picazo destaca que el plazo trienal también es de aplicación a la acción de cobro por los servicios prestados por un médico. Díez-Picazo, La Prescripción, op. Cit., pág. 207-08.

El referido tratadista también sostiene que el término "agente", en el contexto del citado artículo, presenta dificultades en tanto el primer inciso del

Artículo 1.967 parece referirse exclusivamente a la retribución de las profesiones jurídicas; razón por la cual, podría argumentarse que el término "agente" es utilizado en referencia a los agentes judiciales. No obstante, señala que los agentes judiciales en realidad están comprendidos en la categoría de curiales, y la más sabia interpretación es que el término "agente" se refiere a los agentes de negocios. Como consecuencia de ello, deduce que el plazo trienal aplicable a los "agentes" puede ser "aplicable a cierto tipo de profesional, que merecen, al menos socialmente, la consideración de agentes (por ejemplo de propiedad inmobiliaria, de publicidad, de patentes y marcas, etc.)." Díez-Picazo, La Prescripción, op. Cit., pág. 205-06. Díez-Picazo señala, por último, que mientras la acción para exigir el cobro de ordinario prescribe a los quince años, cuando el mediador es un profesional de la mediación, debe aplicar el término prescriptivo trienal propia de los profesionales. Díez-Picazo, Sistema de Derecho Civil, op. Cit., pág. 480.

Por analogía, el mismo plazo debe ser aplicado a los corredores de bienes raíces, profesionales licenciados en nuestra jurisdicción. Adviértase que en nuestra jurisdicción, el corredor de bienes raíces es un profesional licenciado para ello bajo la Ley de Negocios de Bienes Raíces y Profesión de Corredor, Vendedor o Empresa de Bienes Raíces, Ley Núm. 10 de 26 de abril de 1994, 20 L.P.R.A. §3025 et. Seq., la cual revocó la

antigua Ley de la Junta Examinadora de Corredores de Bienes Raíces, Ley Núm. 139 de 14 de junio de 1980, 20 L.P.R.A. §3001 et. Seq.

En el contrato de corretaje suscrito el 25 de noviembre de 1988, Berríos López autorizó a Colón a vender su propiedad, y las partes acordaron las siguientes cláusulas y condiciones:

> PRIMERO: Dicha autorización es por un término renovable de ciento veinte días a partir de la firma de este documento renovable por términos iguales de nos existir notificación por escrita [sic] debidamente certificada por el servicio de correos de los E.E.U.U. de una de las partes desistiendo de dicha contratación a su vencimiento.
>
> SEGUNDO: La comisión a ser pagada al corredor por la venta de la propiedad arriba descrita sera [sic] de un 5% (CINCO %) del precio total de la venta. La comisión sera [sic] pagada al firmar las escrituras ante el notario que por acuerdo de las partes seleccionen.
>
> TERCERO: Que toda transacción referente a la propiedad arriba descrita sera [sic] canalizada a través del corredor contratado con carácter de exclusividad bajo los mismos términos y condiciones aquí estipuladas.
>
> CUARTO: El vendedor propietario se compromete a honrar todo cliente que le haya sido presentado o notificado por el corredor aún cancelada esta autorización así como a pagar al corredor la comisión acordada por las partes.
>
> QUINTO: El corredor se compromete a mantener informado al vendedor propietario sobre cualquier gestión de venta referente a la propiedad arriba descrita. (Énfasis suplido.)

En primer término, observamos que si bien el contrato de corretaje es uno *sui generis*, al cual le aplican las disposiciones del Código Civil de forma supletoria, contrario a lo que sostiene la peticionaria Meléndez, el referido contrato no contiene disposición alguna relativa

al término dentro del cual se pueden reclamar las prestaciones allí pactadas. La cláusula primera únicamente establece que el contrato será renovable por términos de ciento veinte días hasta que las partes desistan del acuerdo. Ello no es un término prescriptivo para reclamar el cumplimiento del contrato. Además, los términos prescriptivos para entablar una acción no son susceptibles de ser fijados por las partes contratantes sino están claramente establecidos en el Código Civil y otras leyes especiales.

En la cláusula quinta del referido contrato se pactó de forma clara y contundente que Berríos tenía la obligación de informarle a Colón sobre cualquier gestión de venta sobre la propiedad. Durante su testimonio, Berríos López alegó que no le informó de la venta porque creyó que al acogerse a la Ley de Quiebras, el contrato de corretaje había quedado sin efecto. Sin embargo, nunca presentó documentación alguna que evidenciara que la corte de quiebras, como parte de los procedimientos ante sí, haya decretado la cancelación del contrato de corretaje.

En el caso de autos no albergamos duda de que Berríos López incumplió con el contrato de corretaje porque no le informó a Colón Guzmán sobre la venta de la propiedad a Martínez. Así, pues, no existe controversia alguna en torno a que el contrato de corretaje era uno válido y Berríos López incumplió con lo allí pactado y nunca le pagó la comisión adeudada a Colón Guzmán. Como

consecuencia de ello, resulta innecesario atender los señalamientos de error octavo y noveno en tanto tratan sobre el incumplimiento del contrato de corretaje.

En resumen, la controversia ante nuestra consideración se circunscribe a determinar si Colón Guzmán reclamó oportunamente el pago de la comisión pactada y el resarcimiento de los daños y perjuicios que le fueron ocasionados por el incumplimiento del contrato de corretaje. La respuesta es en la negativa.

Tomando en cuenta las influencias que definen nuestro ordenamiento jurídico, somos del criterio que un corredor de bienes raíces --el cual es, ciertamente, una "profesional"-- funge como "agente" del que lo contrata con el propósito de que le pueda vender su propiedad a un tercero. Según bien señala Puig Brutau, "[e]l corredor interviene para mediar entre dos personas a las que pondrá en relación para que contraten entre sí. El derecho a cobrar la comisión depende de la efectiva celebración de un contrato en el que el corredor no interviene como parte." Puig Brutau, Fundamentos de Derecho Civil, op. Cit., pág. 480. Entendemos que aplicar el plazo prescriptivo de quince años que dispone el Artículo 1864 a esta clase de situaciones, resulta irrazonable. Ello, ciertamente, no ayudaría a facilitar y fomentar las transacciones en el campo de bienes raíces. Concluimos, en consecuencia, que un corredor de bienes raíces es un "agente" a tenor con el Artículo 1867 del Código Civil, y

como consecuencia, el término trienal que dispone la referida disposición legal es de aplicación a las acciones dirigidas a reclamar el pago de la comisión o resarcimiento por los servicios prestados por un corredor de bienes raíces en virtud de un contrato de corretaje válido.

V

Finalmente, nos referimos a las alegaciones, de la parte demandante, contradictorias entre sí, a los efectos de que el plazo prescriptivo fue interrumpido.

En Galib Frangie v. El Vocero de P.R., ante, pág. 568, citando a Puig Brutau, destacamos que para que se interrumpa el término prescriptivo, el acreedor debe efectuar una reclamación extrajudicial de "forma clara e inequívoca, que no deje dudas acerca de su intención." Además, hemos señalado que no basta que el acreedor le curse al deudor una notificación limitada a proveer información, porque ello no constituye una manifestación inequívoca de quien expresa la voluntad de no perder su derecho. Galib Frangie v. El Vocero de P.R., ante, citando a Zambrana v. E.L.A., ante. Es preciso que el acreedor del derecho identifique claramente tanto al deudor como al acreedor e indique los elementos necesarios para entablar su reclamación. De León v. Caparra Center, ante. Además, el reclamo debe estar dirigido, y debe ser recibido, por el deudor. Ciertamente, Colón Guzmán nunca le envió una

comunicación a Berríos reclamando el pago de su comisión. No obra en el expediente prueba alguna sobre ello.

Según destacamos anteriormente, resultan contradictorias las alegaciones que en su día formuló Colón Guzmán a los efectos de que, aún cuando desconocía de la venta del inmueble, por otro lado realizó gestiones dirigidas a cobrar su comisión. De su propio testimonio surge que él advino en conocimiento de la venta del inmueble en el 1994 por medio del hermano del comprador de la propiedad así como del hermano de Berríos López, por lo cual conocía sobre la venta de la misma y no realizó gestiones legalmente efectivas de cobro que hubieran interrumpido el plazo prescriptivo.[6]

Tomando en cuenta lo anterior, concluimos que no erró el tribunal recurrido al determinar que el término prescriptivo no fue interrumpido mediante una reclamación extrajudicial. No podemos avalar la desidia en que incurrió Colón Guzmán en el reclamo de sus derechos, aún ante el claro incumplimiento de parte de Berríos López. Resolver lo contrario contravendría los principios básicos de la figura de la prescripción, elemento esencial de nuestro ordenamiento jurídico.

---

[6] Las gestiones de cobro alegadamente realizadas por Colón Guzmán, con un contador de Berríos López, no cumplen con los requisitos exigidos por nuestra jurisprudencia.

VI

En mérito de todo lo antes expuesto, procede dictar Sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Apelaciones.

Se dictará Sentencia de conformidad.

FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Edish Meléndez Guzmán

    Apelante

       vs.                            AC-2007-34          APELACIÓN

Felipe Berríos López

    Apelado

SENTENCIA

San Juan, Puerto Rico, a 16 de enero de 2008

Por los fundamentos expuestos en la Opinión que antecede, la cual hacemos formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la emitida por el Tribunal de Apelaciones en el presente caso.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo