El Juez Asociado Señor Rebollo López
emitió la opinión del Tribunal.
El 25 de noviembre de 1988, Felipe Berrios López y José A. Colón Guzmán —este último en su carácter de corredor de bienes raíces— suscribieron un contrato de corretaje *1014 que titularon “Autorización de Venta Exclusiva”. En éste, Berríos López autorizó a Colón Guzmán a vender unos bie-nes inmuebles de su propiedad: el centro comercial Berríos Cash and Carry, ubicado en Villalba, y Berríos Cash and Carry, ubicado en Juana Díaz. Entre las cláusulas y condi-ciones del contrato, éstos acordaron que la autorización de venta sería por un término de ciento veinte días, renovable por plazos iguales si las partes no notificaban, por correo certificado, su interés de desistir del acuerdo. Además, pac-taron una comisión de cinco por ciento del total de la venta, la cual sería pagada a Colón Guzmán una vez se firmara la escritura de compraventa. En la tercera cláusula del con-trato, acordaron que toda transacción relativa a la propie-dad objeto del acuerdo sería canalizada, exclusivamente, a través de Colón Guzmán.
El 19 de mayo de 1989, Colón Guzmán le remitió una carta a Berríos López con una lista de clientes potenciales para la venta de la propiedad; entre ellos se encontraba José Antonio Martínez. El 8 de agosto de 1989, Berríos López se acogió a los beneficios de la Ley de Quiebras. La Corte de Quiebras emitió su decreto final el 30 de septiem-bre de 1993. El 31 de marzo de 1994, Berríos López suscri-bió una escritura pública mediante la cual vendió la pro-piedad a Martínez y a su esposa por $500,000.
El 11 de julio de 2000, Colón Guzmán presentó una de-manda, por incumplimiento de contrato y daños y perjui-cios, contra Berríos López, ante la Sala de Ponce del Tribunal de Primera Instancia. En ella misma alegó que éste nunca le notificó sobre la venta de la propiedad, en viola-ción a la autorización del contrato de venta exclusiva sus-crito en 1988. A raíz de tal incumplimiento, solicitó el pago de la comisión pactada, ascendente al cinco por ciento del total de la venta de la propiedad y el resarcimiento por los daños, sufrimientos y angustias mentales que le ocasionó el incumplimiento.
Berríos López contestó la demanda, negando sus alega-ciones fundamentales. Entre sus defensas afirmativas *1015 adujo que la demanda estaba prescrita. Posteriormente, el 10 de julio de 2002, Berrios López solicitó formalmente la desestimación de la demanda fundamentado en que la causa de acción prescribió, según el Art. 1867 del Código Civil, 31 L.P.R.A. see. 5297. En apoyo a su alegación, adujo que la propiedad fue vendida el 31 de marzo de 1994 y no fue hasta el 11 de julio de 2000 que Colón presentó la de-manda de epígrafe. Argumentó que Colón Guzmán, como corredor de bienes raíces, es un “agente” para efectos del Art. 1867 del Código Civil, supra, por lo cual no le aplicaba el término de quince años provisto en el Art. 1864 del Có-digo Civil, 31 L.P.R.A. see. 5294, sino el plazo trienal del referido Art. 1867 del Código.
Celebrada la vista en su fondo del caso, el 9 de noviem-bre de 2004, el tribunal de instancia dictó sentencia en la que condenó a Berrios López al pago de $25,000, los inte-reses legales, así como las costas, los gastos y los honora-rios del abogado. El foro primario concluyó que Berrios Ló-pez incumplió con lo pactado en el contrato de corretaje, por lo cual, procedía la indemnización en concepto de daños y perjuicios y el pago de la comisión adeudada.(1)
Inconforme con tal determinación, Berrios López recu-rrió al Tribunal de Apelaciones.(2) Tras evaluar las posicio-nes de las partes, el foro apelativo intermedio dictó senten-cia y revocó la decisión del tribunal de instancia. De entrada, destacó dicho tribunal que el foro de instancia había errado al no atender la controversia relativa a la prescripción. Resolvió que un corredor de bienes raíces es considerado un agente según el Art. 1867 del Código Civil, supra. Como consecuencia, Colón Guzmán, quien supo de la venta de la propiedad en 1994, tenía tres años desde tal fecha para exigir el cumplimiento del pago por los servicios prestados. Tomando en cuenta que la demanda fue presen- *1016 tada transcurridos más de seis años desde la venta de la propiedad de Berríos López, la causa de acción estaba prescrita. Además, señaló que no se demostró que Colón Guzmán hubiese efectuado reclamaciones extrajudiciales que interrumpieran el término prescriptivo reseñado, ya que no especificó en qué consistieron los trámites alegados efectuados interruptores de la prescripción.
De tal determinación, la madre de Colón Guzmán acu-dió ante este Tribunal mediante un recurso de apelación.(3) Planteó que erró el Tribunal de Apelaciones al
... concluir que la opinión de un tratadista español prevalece sobre la sentencia del Tribunal Supremo [d]e España];]
... al determinar incuria [por no haber efectuado] gestión al-guna para cobrar la comisión pactada];]
... al ser selectivo con los pasajes de la Transcripción de la Vista en su Fondo [;]
... utilizar la Ley 10 de 26 de abril de 1994 en lugar de la Ley 139 de 14 de junio de 1980 [;]
... obviar que el contrato es la ley entre las partes;
... ignorar que el desconocimiento de la ley no exime del cum-plimiento con la misma [;]
... no considerar el carácter sui generis del contrato de corre-taje al cual no le aplica de manera estricta las disposiciones del Código Civil];]
... no tomar en cuenta que el contrato [suscrito entre las partes] es uno de venta exclusiva que al momento del convenio se regía por cláusulas especiales];]
... poner sobre tan sólo uno de los contratantes el perfecciona-miento de un contrato bilateral];]
... no considerar que el demandante cumplió con todo lo pac-tado en el contrato vis a vis [sic] el demandado utilizó maqui-naciones insidiosas y dolo para no cumplir con lo pactado];]
... al ser dictada por el panel Mayag[ü]ez-Aguadilla una Sen-tencia inconsistente con la dictada por el panel de Guayama
.... Petición de certiorari, págs. 5-6.
Expedimos el recurso. Estando en condiciones de resolver el recurso, procedemos.
*1017 I
 Es una norma trillada que las acciones prescriben por el mero transcurso del tiempo fijado por la ley. Art. 1861 del Código Civil, 31 L.P.R.A. see. 5291. La figura de la prescripción es materia de derecho sustantivo, y no proce-sal, regida expresamente por nuestro Código Civil. Sánchez v. Aut. de los Puertos, 153 D.P.R. 559 (2001); Meléndez v. El Vocero de Puerto Rico, 144 D.P.R. 389 (1997); García Aponte et al. v. E.L.A. et al., 135 D.P.R. 137 (1994). Según bien señala Castán Tobeñas, “[e]l tiempo, con el concurso de otros factores, puede dar lugar a la adquisición de cier-tos derechos, como consecuencia de su ejercicio continuado, o a la extinción de un derecho, a consecuencia de su no ejercicio continuado”. J. Castán Tobeñas, Derecho Civil español, común y foral, 14ta ed., Madrid, Ed. Reus, 1984, T. 1, Vol. 2, pág. 963.
La prescripción es una defensa afirmativa que debe plantearse de forma expresa y oportuna, o de lo contrario, se entiende renunciada. Alamo v. Supermercado Grande, Inc., 158 D.P.R. 93 (2002); Meléndez v. El Vocero de Puerto Rico, ante; Regla 6.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III.
En ocasión de que el transcurso del tiempo ex-tinga un derecho, nos encontramos ante la prescripción extintiva. En ésta, “la Ley fija un límite de tiempo para el ejercicio de los derechos, transcurrido el cual establece una presunción de renuncia o abandono de la acción para reclamarlos”. J. Puig Brutau, Caducidad, prescripción extintiva y usucapión, 3ra ed., Barcelona, Ed. Bosch, 1996, pág. 92. La prescripción extintiva también persigue casti gar la inercia en el ejercicio de los derechos. Suárez Ruiz v. Figueroa Colón, 145 D.P.R. 142 (1998); Meléndez v. El Vocero de Puerto Rico, ante. A tales efectos, hemos expresado que “el transcurso del periodo de tiempo establecido por ley sin que el titular del derecho lo reclame, da lugar a la pre- *1018 sunción legal de abandono del mismo”, a la vez eliminando la incertidumbre de las relaciones jurídicas. García Aponte et al. v. E.L.A. et al., ante, pág. 142.
Así, cuando transcurre el periodo de tiempo que fija la ley se extingue la acción para hacer efectivo el derecho en cuestión y el deudor queda liberado de su obligación en tanto puede negarse a cumplir con ella, fundamentado en que ésta fue reclamada tardíamente. García Aponte et al. v. E.L.A. et al., ante. La prescripción extintiva opera en torno a los derechos reales y a los de crédito. Castán Tobe-ñas, op. cit., pág. 965.
Castán, citando a Coviello, señala tres requisitos para que se configure la prescripción extintiva, a saber: (1) la existencia de un derecho que se pueda ejercitar, (2) la falta de ejercicio o inercia por parte del titular, y (3) el transcurso del tiempo determinado en la ley. Castán Tobeñas, op. cit., pág. 973; Véase, además, J.R. Vélez Torres, Derecho de obligaciones: curso de derecho civil, 2da ed., San Juan, Ed. U.I.A, 1997, pág. 371.
Nuestro Código Civil establece los términos prescriptivos particulares para las diversas acciones, tanto las reales como las personales. En lo pertinente, el Art. 1864 del nuestro Código Civil, supra, dispone que las acciones personales, que no tienen señalado un término especial de prescripción, prescriben a los quince años. De otro lado, el Art. 1867(1), supra, establece un término prescriptivo de tres años para el cumplimiento de la obligación de pagar los honorarios, gastos y desembolsos que hayan realizado los jueces, abogados, notarios, peritos, agentes y curiales en el desempeño de sus cargos.(4) El plazo comenzará a con- *1019 tarse desde la fecha cuando dejaron de prestarse los servi-cios pactados.
Puig Brutau señala que es razonable imponer un tér-mino más corto para el reclamo de la remuneración de los servicios o del trabajo, en vista de que un profesional debe ser diligente en el cobro de su retribución. Puig Brutau, op. cit., pág. 171. Además, este término trienal aplica a “crédi-tos cuyo pago es normal que se haga de manera rápida, inmediata o casi inmediata”, por surgir de deudas de la vida cotidiana. Vélez Torres, op. cit., pág. 393, citando a L. Diez-Picazo, La Prescripción en el Código Civil, Barcelona, Ed. Bosch, 1964, págs. 199-200.
Ahora bien, la prescripción de un derecho es lo excepcional, en vista de que su ejercicio o conservación es lo normal. Meléndez v. El Vocero de Puerto Rico, ante; Galib Frangie v. El Vocero de P.R., 138 D.P.R. 560 (1995). Como corolario, nuestro ordenamiento jurídico permite la interrupción de los términos prescriptivos. Éstos se entienden interrumpidos cuando el titular del derecho lleva a cabo gestiones que demuestran su interés en reclamar su acreencia. Puig Brutau, op. cit., pág. 92. Sobre el particular, el Art. 1873 del Código Civil, 31 L.P.R.A. see. 5303, dispone que “[l]a prescripción de las acciones se interrumpe por ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor”. Una vez el término queda interrumpido, comenzará a computarse nuevamente desde el momento cuando se produce el acto interruptor. Sánchez v. Aut. de los Puertos, ante; Suárez Ruiz v. Figueroa Colón, ante; García Aponte et al. v. E.L.A. et al., ante.
No existen requisitos de forma para una reclamación extrajudicial; por lo cual, ésta puede ser verbal o escrita, siempre que sea efectuada en el término prescriptivo. Vélez Torres, op. cit., pág. 381; Sánchez v. Aut. de los Puertos, ante; Maldonado v. Russe, 153 D.P.R. 342 (2001); De León v. Caparra Center, 147 D.P.R. 797 (1999); Galib Fran- *1020 gie v. El Vocero de P.R., ante. Incluso, la ley no limita los actos que pueden ser interruptores, admitiendo todos aquellos donde la voluntad del acreedor quede patente. Galib Frangle v. El Vocero de P.R., ante.
Sin embargo, hemos destacado que para que surta un efecto interruptor, la reclamación extrajudicial debe ser una manifestación inequívoca de quien, amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo. Sánchez v. Aut. de los Puertos, ante; De León v. Caparra Center, ante; Martínez v. Soc. de Gananciales, 145 D.P.R. 93 (1998); Meléndez v. El Vocero de Puerto Rico, ante; García Aponte et al. v. E.L.A. et al., ante; Galib Frangle v. El Vocero de P.R., ante.
En Sánchez v. Aut. de los Puertos, ante, reiteramos los requisitos para que una reclamación extrajudicial interrumpa un término prescriptivo, a saber que: (1) se realice antes de la consumación del plazo; (2) se haga por el titular del derecho o de la acción; (3) el medio utilizado sea el adecuado o idóneo, y (4) exista identidad entre el derecho reclamado y aquel afectado por la prescripción. Véanse, además: Maldonado v. Russe, ante; Galib Frangle v. El Vocero de P.R., ante; De León v. Caparra Center, ante. Le corresponde al titular del derecho demostrar el cumplimiento con dichos requisitos. Sánchez v. Aut. de los Puertos, ante.
De otra parte, en Díaz de Diana v. A.J.A.S. Ins. Co., 110 D.P.R. 471, 476 (1980), citando a Diez-Picazo, adoptamos la norma de que una reclamación extrajudicial “es un acto de declaración de voluntad de naturaleza recepticia. Debe ser dirigido al sujeto pasivo del derecho y debe ser recibido por éste. De aquí que no pueda reconocerse eficacia interruptiva a los actos de afirmación de un derecho que no sean dirigidos al obligado o sujeto pasivo de la acción, sino a terceros, a personas distintas, a la generalidad”. (Énfasis suprimido.) Véase Zambrana Maldonado v. E.L.A., 129 D.P.R. 740 (1992).
*1021 II
Nos corresponde resolver si un corredor de bienes raíces es un “agente” para efectos del Art. 1867 del Código Civil, supra, y, como consecuencia, le aplica el plazo trienal allí establecido para reclamar el pago de su comisión y otros haberes por sus servicios o si, por el contrario, ^se trata de una acción personal a la cual le aplica el plazo prescriptivo de quince años que dispone el Art. 1864 del Código Civil, supra.
En su recurso la peticionaria Meléndez argumenta, en síntesis, que Berríos López incumplió con el contrato de corretaje que suscribió con Colón Guzmán en 1988, al nunca notificarle sobre la venta de la propiedad a Martí-nez, uno de los clientes potenciales provisto por Colón me-diante listado que éste le entregó a Berríos el 9 de mayo de 1989. Por tal motivo, Meléndez aduce que Berríos López le adeuda el pago de la comisión de cinco por ciento del precio total de la venta del inmueble, los intereses acumulados, así como una compensación en concepto de angustias men-tales, daños y perjuicios.
Ahora bien, ante la defensa afirmativa de prescripción que fue planteada por Berríos López en su contestación a la demanda y posterior solicitud de desestimación, Melén-dez alega que, en el caso de marras, aplica el plazo pres-criptivo de quince años provisto en el Art. 1864, supra. En apoyo a su argumento, cita fuentes españolas para argüir que, contrario a lo alegado por Berríos López, un corredor de bienes raíces no es un “agente” para efectos del plazo trienal del Art. 1867 del Código Civil, supra.
Más aún, sostiene que el Código Civil es de naturaleza supletoria y resulta innecesario acudir a sus disposiciones cuando existen cláusulas especiales en el contrato de corre-taje que rigen, de forma primaria, la relación jurídica entre las partes. En particular, sostiene incorrectamente que el asunto de la prescripción del contrato estaba cubierto en el contrato de corretaje “de manera detallada”.
*1022 En oposición a lo expuesto, Berrios López admite que incumplió con el contrato de corretaje al venderle la pro-piedad a Martínez y no pagarle la comisión pautada a Co-lón Guzmán. Sin embargo, señala que Colón Guzmán no fue diligente en el reclamo del pago de los honorarios que le eran adeudados, porque presentó la demanda transcu-rridos más de seis años desde la venta del inmueble y nunca efectuó gestiones para cobrar su acreencia con ante-rioridad a la presentación de la demanda. En particular, arguye que la reclamación de los demandantes está pres-crita porque se trata del cobro de los servicios prestados por un corredor de bienes raíces, el cual es considerado un “agente” según el Art. 1867 del Código Civil, supra, y al cual le aplica el término trienal que dispone este artículo. Citando tratadistas españoles, indica que un corredor de bienes raíces es un “agente” en tanto que presta un servicio de intermediario para gestionar negocios ajenos.
Si bien es cierto que el Art. 1864 del Código Civil, supra, establece un término prescriptivo de quince años para las acciones personales que no tengan uno especial de prescripción, hemos señalado que “éste término no aplica automáticamente cuando la ley no fija un término particular para una acción personal, pues en tales situaciones debemos utilizar inicialmente el término de mayor analogía”. Maldonado v. Russe, ante, pág. 348. Como consecuencia, al determinar el plazo prescriptivo para reclamar el pago de las comisiones pactadas en un contrato de corretaje, primero es preciso evaluar los orígenes y las características de esta clase de contrato.
III
A. Este Tribunal ha atendido controversias relativas al contrato de corretaje en varias ocasiones. Sobre ello, hemos señalado que el contrato de corretaje es de naturaleza sui géneris, que a pesar de no estar regulado de forma expresa en nuestro Código Civil, está íntimamente *1023 relacionado al contrato de mandato y se rige por las dispo-siciones del Código Civil relativas a dicho tipo de contrato especial. Véanse: Colegio Intl’ Sek P.R., Int. v. Escribá, 135 D.P.R. 647 (1994); Dumont v. Inmobiliaria Estado, Inc., 113 D.P.R. 406 (1982); Torres v. Arbona, J.R., 72 D.P.R. 769 (1951).
En ausencia de disposiciones expresas que regulan el contrato de corretaje, en Dumont v. Inmobiliaria Estado, Inc., supra, adoptamos lo expresado por Castán Tobeñas, op. cit., pág. 567, a los efectos de que
[e]l contrato de corretaje se ha de regir por las normas esta-blecidas por las partes ... y, en su defecto, como el Código Civil no lo regula en particular, habrá que suplir el vacío legal apli-cando las disposiciones generales contenidas en los títulos I y II del libro IV del mismo Código ... los usos y costumbres pro-pios de su naturaleza ...y, en cuanto en cada caso puedan ser oportunas, las reglas que le sean afines de aquellos contratos típicos con los que guarda íntima relación, como el mandato, la comisión mercantil y el arrendamiento de obras y servicios. (Enfasis suplido.) Véanse, además: Colegio IntV Sek P.R., Int. v. Escribá, ante; R. Cintrón Perales, El contrato de corretaje de bienes raíces y de opción de compraventa de propiedades resi-denciales, Ira ed., San Juan, Ed. Situm, 2006, págs. 3-4.
No obstante sus expresiones en torno a las analogías entre los contratos de corretaje y mandato, Castán Tobeñas también señala que, aun cuando el contrato de corretaje se asemeja a los contratos de mandato y a los arrendamientos de obras y servicios, también posee características que le diferencian claramente. Castán Tobeñas, op. cit., pág. 565. A modo de ejemplo, distinto al mandatario, el corredor no participa en la contratación ni funge como representante. Del mismo modo, a diferencia del arrendamiento de obras y servicios, el mediador o corredor no tiene el derecho a la retribución si no se celebra el contrato que le fue encargado. J. Santos Briz y otros, Tratado de Derecho Civil: teoría y práctica, Barcelona, Ed. Bosch, 2003, Vol. 3, pág. 462.
Frecuentemente, la mediación y los contratos de corre-taje también han sido comparados y discutidos de forma *1024 conjunta. Diez-Picazo resalta que el Código Civil no regula la prestación de los servicios por parte de los mediadores o los corredores. Asimismo, ni el mediador ni el corredor fun-gen como representantes de otro. Además, ambos tienen el derecho a la retribución sólo cuando el contrato principal ha sido realizado. L. Diez-Picazo y A. Gullón, Sistema de Derecho Civil, 3era ed., Ed. Tecnos, Madrid, 1982, Vol. 3, pág. 479; Véanse: J. Santos Briz, Derecho Civil: teoría y práctica, Ed. Rev. Der. Privado, Madrid, 1973, T. IV, págs. 455-557; Santos Briz, op. cit., págs. 461-462.(5)
En un intento de llenar la laguna jurídica existente en torno al contrato de corretaje, los tratadistas españoles lo han definido como aquel en cuya virtud una de las partes (corredor) se compromete a indicar a la otra (comitente) la oportunidad de concluir un negocio jurídico con un tercero o a servirle de intermediario a esta conclusión, a cambio de una retribución, comúnmente llamada comisión. F. Puig Peña, Compendio de Derecho Civil español, 3ra ed., Madrid, Ed. Pirámides, 1976, Vol. 3, pág. 210; Castán Tobeñas, op. cit., pág. 563; J. Puig Brutau, Fundamentos de Derecho Civil: Contratos en Particular, 2de ed., Ed. Bosch, 1982, T. II, Vol. II, pág. 480; Diez-Picazo, Sistema de Derecho Civil, op. cit., pág. 480.
Este contrato ha sido descrito como atípico, innominado, principal, consensual y bilateral, a través del cual las par-tes se imponen obligaciones recíprocas fundamentadas en la prestación de los servicios de corretaje. Puig Peña, op. cit., págs. 211-212; Castán Tobeñas, op. cit., pág. 566; San *1025 tos Briz, op. cit., pág. 462; Diez-Picazo, Sistema de Derecho Civil, op. cit., pág. 480.
Vélez Torres indica que, en esencia, el corredor de bie-nes raíces se obliga, en virtud de un contrato de mandato, a gestionar clientes. Consecuentemente, en tanto el corre-dor tiene por ocupación el desempeño de servicios de la especie a los que se refiere el mandato, se presume la obli-gación de retribuirlo según el Art. 1602 de Código Civil, 31 L.P.R.A. see. 4423. Vélez Torres, op. cit., pág. 420.
Surge de todo lo expuesto que el contrato de corretaje posee características que le asemejan al contrato de mandato, a la mediación y al arrendamiento de obras y servicios. Sin embargo, también retiene características particulares a su género que procuran una evaluación pormenorizada de las normas que le aplican. De ahí que debemos analizar las diversas vertientes jurídicas que han sido desarrolladas en tomo a cuál es el término prescriptivo para cobrar la comisión pactada en un contrato de corretaje.
IV
Al discutir el plazo trienal del Artículo 1.967, disposición equivalente a nuestro Artículo 1867, supra, Diez-Picazo indica que dicho término prescriptivo aplicación a las gestiones dirigidas a obtener retribución o remunera-ción por servicios que han sido prestados por el acreedor. L. Diez-Picazo, La Prescripción en el Código Civil, Barcelona, Ed. Bosch, 1964, pág. 200. Véase Puig Brutau, op. cit., págs. 170-171. Señala, además, que este artículo de ley denota una diferencia entre los servicios prestados por un profesional y aquellos que rinde un no profesional. Sobre ello, apunta que si los servicios fueron prestados por un profesional, el crédito para cobrar la acreencia prescribe a los tres años desde que cesaron los servicios, mientras los servicios prestados por no profesionales prescriben a los quince años. Diez-Picazo, La Prescripción, op. cit., pág. *1026 201. Véase Vélez Torres, op. cit., págs. 393-394. La aplicación del plazo acortado de tres años responde a la diligencia que debe desplegar un profesional en el cobro de su retribución. Diez-Picazo, La Prescripción, op. cit., pág. 200. Véase Puig Brutau, op. cit., pág. 171. A modo de ejemplo, Diez-Picazo destaca que el plazo trienal también aplica a la acción de cobro por los servicios prestados por un médico. Diez-Picazo, La Prescripción, op. cit., págs. 207— 208.
El tratadista también sostiene que el término “agente”, en el contexto del citado artículo, presenta dificultades en tanto el primer inciso del Art. 1.967, supra, parece refe-rirse exclusivamente a la retribución de las profesiones ju-rídicas; razón por la cual, podría argumentarse que el tér-mino “agente” es utilizado en referencia a los agentes judiciales. No obstante, señala que los agentes judiciales en realidad están comprendidos en la categoría de curiales, y la más sabia interpretación es que el término “agente” se refiere a los de negocios. Como consecuencia de ello, deduce que el plazo trienal aplicable a los “agentes” puede ser “aplicable a cierto tipo de profesional, que merecen, al me-nos socialmente, la consideración de agentes (por ejemplo de propiedad inmobiliaria, de publicidad, de patentes y marcas, etc.)”. Diez-Picazo, La Prescripción, op. cit., págs. 205-206. Diez-Picazo señala, por último, que mientras la acción para exigir el cobro, de ordinario, prescribe a los quince años, cuando el mediador es un profesional de la mediación, debe aplicar el término prescriptivo trienal pro-pio de los profesionales. Diez-Picazo, op. cit, pág. 480.
Por analogía, el mismo plazo debe ser aplicado a los corredores de bienes raíces, profesionales licenciados en nuestra jurisdicción. Adviértase que en nuestra jurisdic-ción, el corredor de bienes raíces es un profesional licen-ciado para ello según la Ley de Negocios de Bienes Raíces y Profesión de Corredor, Vendedor o Empresa de Bienes Raíces, Ley Núm. 10 de 26 de abril de 1994 (20 L.P.R.A. see. 3025 et seq.), la cual revocó la antigua Ley de la Junta *1027 Examinadora de Corredores de Bienes Raíces, Ley Núm. 139 de 14 de junio de 1980 (20 L.RR.A. see. 3001 et seq.).
En el contrato de corretaje suscrito el 25 de noviembre de 1988, Berríos López autorizó a Colón a vender su pro-piedad, y las partes acordaron las cláusulas y condiciones siguientes:
PRIMERO: Dicha autorización es por un término renovable de ciento veinte días a partir de la firma de este documento re-novable por términos iguales de nos existir notificación por escrita [sic] debidamente certificada por el servicio de correos de los E.E.U.U. de una de las partes desistiendo de dicha con-tratación a su vencimiento.
SEGUNDO: La comisión a ser pagada al corredor por la venta de la propiedad arriba descrita sera [sic] de un 5% (CINCO %) del precio total de la venta. La comisión sera [sic] pagada al firmar las escrituras ante el notario que por acuerdo de las partes seleccionen.
TERCERO: Que toda transacción referente a la propiedad arriba descrita sera [sic] canalizada a través del corredor con-tratado con carácter de exclusividad bajo los mismos términos y condiciones aquí estipuladas.
CUARTO: El vendedor propietario se compromete a honrar todo cliente que le haya sido presentado o notificado por el corredor aún cancelada esta autorización así como a pagar al corredor la comisión acordada por las partes.
QUINTO: El corredor se compromete a mantener informado al vendedor propietario sobre cualquier gestión de venta referente a la propiedad arriba descrita. (Enfasis suplido.) Apéndice de la Petición de certiorari, pág. 142.
En primer término, observamos que si bien el contrato de corretaje es sui generis, al cual le aplican las disposicio-nes del Código Civil de forma supletoria, contrario a lo que sostiene la peticionaria Meléndez, el contrato no contiene disposición alguna relativa al término en el cual se pueden reclamar las prestaciones allí pactadas. La cláusula pri-mera únicamente establece que el contrato será renovable por términos de ciento veinte días hasta que las partes desistan del acuerdo. Ello no es un término prescriptivo para reclamar el cumplimiento del contrato. Además, los términos prescriptivos para entablar una acción no son susceptibles de ser fijados por las partes contratantes sino *1028 están claramente establecidos en el Código Civil y otras leyes especiales.
En la quinta cláusula del contrato se pactó de forma clara y contundente que Berrios tenía la obligación de in-formarle a Colón sobre cualquier gestión de venta sobre la propiedad. Durante su testimonio, Berrios López alegó que no le informó de la venta, porque creyó que al acogerse a la Ley de Quiebras, el contrato de corretaje había quedado sin efecto. Sin embargo, nunca presentó documentación al-guna que evidenciara que la corte de quiebras, como parte de los procedimientos ante sí, haya decretado la cancela-ción del contrato de corretaje.
En el caso de autos no albergamos duda de que Berrios López incumplió con el contrato de corretaje, porque no le informó a Colón Guzmán sobre la venta de la propiedad a Martínez. Así, pues, no existe controversia alguna en torno a que el contrato de corretaje era válido y Berrios López incumplió con lo allí pactado y nunca le pagó la comisión adeudada a Colón Guzmán. Como consecuencia de ello, re-sulta innecesario atender los señalamientos de error octavo y noveno en tanto tratan sobre el incumplimiento del contrato de corretaje.
En resumen, la controversia ante nuestra consideración se circunscribe a determinar si Colón Guzmán reclamó oportunamente el pago de la comisión pactada y el resar-cimiento de los daños y perjuicios que le fueron ocasiona-dos por el incumplimiento del contrato de corretaje. La res-puesta es en la negativa.
Tomando en cuenta las influencias que definen nuestro ordenamiento jurídico, sabemos que un corredor de bienes raíces —el cual es, ciertamente, un “profesional”— funge como “agente” del que lo contrata con el propósito de que le pueda vender su propiedad a un tercero. Según bien señala Puig Brutau, “ [e] 1 corredor interviene para mediar entre dos personas a las que pondrá en relación para que contraten entre sí. El derecho a cobrar la comisión depende de la efectiva celebración de un contrato en el que el corre- *1029 dor no interviene como parte”. Puig Brutau, Fundamentos de Derecho Civil, op. cit., pág. 480. Entendemos que aplicar el plazo prescriptivo de quince años que dispone el Art. 1864, supra, a esta clase de situaciones, resulta irrazonable. Ello, ciertamente, no ayudaría a facilitar y fo-mentar las transacciones en el campo de las bienes raíces. Concluimos, en consecuencia, que un corredor de bienes raíces es un “agente” según el Art. 1867 del Código Civil, supra, y como consecuencia, el término trienal que dispone la disposición legal aplica a las acciones dirigidas a recla-mar el pago de la comisión o resarcimiento por los servicios prestados por un corredor de bienes raíces en virtud de un contrato de corretaje válido.
V
Finalmente, nos referimos a las alegaciones, de la parte demandante, contradictorias entre sí, a los efectos de que el plazo prescriptivo fue interrumpido.
En Galib Frangie v. El Vocero de P.R., ante, pág. 568, citando a Puig Brutau, destacamos que para que se interrumpa el término prescriptivo, el acreedor debe efectuar una reclamación extrajudicial de “forma clara e inequívoca, que no deje dudas acerca de su intención”. Además, hemos señalado que no basta con que el acreedor le curse al deudor una notificación limitada a proveer información, porque ello no constituye una manifestación inequívoca de quien expresa la voluntad de no perder su derecho. Galib Frangie v. El Vocero de P.R., ante, citando a Zambrana Maldonado v. E.L.A., ante. Es preciso que el acreedor del derecho identifique claramente tanto al deudor como al acreedor e indique los elementos necesarios para entablar su reclamación. De León v. Caparra Center, ante. Además, el reclamo debe estar dirigido, y debe ser recibido, por el deudor. Ciertamente, Colón Guzmán nunca le envió una comunicación a Berrios reclamando el pago de *1030 su comisión. No obra en el expediente prueba alguna sobre ello.
Según destacamos, resultan contradictorias las alega-ciones que en su día formuló Colón Guzmán a los efectos de que, aún cuando desconocía de la venta del inmueble, por otro lado realizó gestiones dirigidas a cobrar su comisión. De su propio testimonio surge que él supo de la venta del inmueble en 1994 por medio del hermano del comprador de la propiedad, así como del hermano de Berríos López, por lo cual conocía sobre la venta de ésta y no realizó gestiones legalmente efectivas del cobro que hubieran interrumpido el plazo prescriptivo.(6)
Tomando en cuenta lo anterior, concluimos que no erró el tribunal recurrido al determinar que el término pres-criptivo no fue interrumpido mediante una reclamación extrajudicial. No podemos avalar la desidia en que incurrió Colón Guzmán en el reclamo de sus derechos, aún ante el claro incumplimiento por parte de Berríos López. Resolver lo contrario contravendría los principios básicos de la fi-gura de la prescripción, elemento esencial de nuestro orde-namiento jurídico.

$

En mérito de todo lo expuesto, procede dictar Sentencia confirmatoria de la emitida en este caso por el Tribunal de Apelaciones.

Se dictará Sentencia de conformidad.

 No hizo alusión alguna a la moción de desestimación presentada por Berrios.

 Luego de presentado el recurso, Colón Guzmán falleció, ante lo cual su ma-dre, Edish Meléndez Guzmán, le sustituyó en el pleito.

 Es preciso aclarar que acogemos este recurso como un certiorari, por ser éste el apropiado.

 Conforme al Diccionario de la Real Academia Española, un agente, en térmi-nos generales, es el “que obra o tiene virtud de obrar” o “que tiene a su cargo una agencia para gestionar asuntos ajenos o prestar determinados servicios”. Real Academia de la Lengua Española, Diccionario de la Lengua Española, 22da ed., Ed. Espasa-Calpe, 2001, T. 1, pág. 61. Por su parte, define un agente comercial como aquel que profesionalmente gestiona por cuenta ajena, mediante comisión, y sujeto a las condiciones estipuladas por el que representa. Mientras, el agente de negocios tiene por oficio gestionar negocios ajenos.

B) Por su parte, en el derecho anglosajón, el mandato es conocido como la figura de la agencia o “agency”, relación fiduciaria, mediante la cual una persona se obliga a actuar por la otra. R. Vélez Torres, Curso de Derecho Civil: derecho de contratos, San Juan, Ed. Rev. Jur. U.I.P.R., 1990, T. IV, Vol. II, pág. 434; Cintrón Perales, op. cit., pág. 52. Sobre el particular, la jurisprudencia federal ha señalado: “[t]he relation of agency is created as the result of conduct by two parties manifesting that one of them is willing for the other to act for him, and the agent must act or agree to act on the principal’s behalf and subject to his control .’’Premium Financing Spec. v. Transportation Spec., 768 F.2d 282, 284 (8vo Cir. 1985), citando a RESTATEMENT OF AGENCY Sec. 1, comment A. Véase Rufenacht v. Iowa Beef Processors, Inc., 656 F.2d 198 (8vo Cir. 1981).

 Las gestiones de cobro que se alega fueron realizadas por Colón Guzmán, con un contador de Berríos López, no cumplen con los requisitos exigidos por nuestra jurisprudencia.